## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. ZIMMERMAN,** | : Civil Action No.: 1:13-cv-2788 |
| **Plaintiff,** | : |
| | : District Judge: Yvette Kane |
| **v.** | : |
| | : CIVIL ACTION – LAW |
| **THOMAS W. CORBETT, et al.,** | : |
| **Defendants.** | : JURY TRIAL DEMANDED |

## BRIEF OF PLAINTIFF
## IN OPPOSITION TO MOTION OF DEFENDANTS TO DISMISS

**Respectfully Submitted,**

_____

**Date:  June 30, 2014**

**DEVON M. JACOB, ESQUIRE**
Pa. Sup. Ct. I.D. 89182
Counsel for Plaintiff

**JACOB LITIGATION**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com

# **Table of Contents**

Table of Authorities ................................................................................................ iii

Procedural History ................................................................................................. 1

Statement of facts .................................................................................................. 1

Questions Presented .............................................................................................. 1

Argument ............................................................................................................... 2

   I.   PROBABLE CAUSE DETERMINATIONS MADE AT A PRELIMINARY HEARING OR IN DECIDING A MOTION TO QUASH AN INFORMATION ARE NOT DISPOSITIVE. 4

   II.   THE DEFENDANTS ARE NOT ENTITLED TO ABSOLUTE IMMUNITY WHEN ACTING AS A CRIMINAL INVESTIGATOR AND WHEN PRESENTING TO AN INVESTIGATIVE GRAND JURY, AND ARE NOT IMMUNE FOR ANY CONDUCT OUTSIDE THE SCOPE OF THEIR OFFICIAL PROSECUTORIAL DUTIES. ...................... 6

   III.  THE AMENDED COMPLAINT ALLEGES THAT LINDA L. KELLY AND THOMAS W. CORBETT WERE PERSONALLY INVOLVED IN CAUSING JOHN R. ZIMMERMAN'S CONSTITUTIONAL INJURY. .................................................................. 10

   IV. JOHN R. ZIMMERMAN STATED A CLAIM AGAINST ANTHONY J. FIORE AND GARY E. SPEAKS. ................................................................................................ 14

   V.   IT IS PREMATURE FOR THE COURT TO DECIDE IF THE STATE LAW MALICIOUS PROSECUTION CLAIM IS BARRED BY SOVEREIGN IMMUNITY. ............................... 19

Conclusion .............................................................................................................. 20

CERTIFICATE OF WORD COUNT ........................................................................ 21

CERTIFICATE OF SERVICE ................................................................................ 22

# **Table of Authorities**

## **Federal District Court Cases**

Brandt v. Borough of Palmyra, No. 08-677, 2009 U.S. Dist. LEXIS 27160 (M.D. Pa. Mar. 30, 2009)............................................................................................................................................... 4

Cerami v. Blake, 1993 U.S. Dist. LEXIS 2294 (E.D. Pa., January 20, 1993)................................. 4

Cosby v. Magnotta, 2014 U.S. Dist. LEXIS 24471 (M.D. Pa. February 24, 2014) ..................... 12

Doll v. Williams, 2009 U.S. Dist. LEXIS 88067 (M.D. Pa., Sept. 24, 2009) ................................ 5

Florence Wallace, et al. v. Robert J. Powell, et al. ....................................................................... 10

Johnson v. United States DOJ, 2013 U.S. Dist. LEXIS 65234 (M.D. Pa., May 8, 2013) ............ 10

Wallace v. Powell, 2014 U.S. Dist. LEXIS 2908 (M.D. Pa., January 9, 2014)............................ 10


## **Federal Circuit Court Cases**

A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572 (3d Cir. 2004).............. 12

DiBella v. Borough of Beachwood, 407 F.3d 599 (3d Cir. 2005)................................................... 7

Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003) ............................................................. 7

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009) ............................................................ 3

Losch v. Parkesburg, 736 F.2d 903 (3d Cir. 1984)........................................................................ 4

Phillips v. Cnty. of Allegheny, 515 F.3d 224 (3d Cir. 2008).......................................................... 3

Reed v. City of Chicago, 77 F.3d 1049 (7th Cir. 1996)................................................................. 15

United States ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 295 (3d Cir. 2011)............... 3


## **Supreme Court of the United States Cases**

Ashcroft v. Iqbal, 556 U.S. 662 (2009)........................................................................................... 2

Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) ......................................................... 2

Buckley v. Fitzsimmons, 509 U.S. 259 (1993)........................................................................... 9, 10

Forrester v. White, 484 U.S. 219 (1988)......................................................................................... 8

Kalina v. Fletcher, 522 U.S. 118 (1997) ..................................................................................... 7, 8

Mitchell v. Forsyth, 472 U.S. 511 (1985) ....................................................................................... 8


## **Federal Statutes**

42 U.S.C. § 1983......................................................................................................................... 9, 12


## **Federal Rules**

Federal Rule of Civil Procedure 12 .............................................................................................. 2, 3

**Court of Common Pleas of Pennsylvania Cases**

Commonwealth v. Heim, 12 Pa. D. & C.4th 310 (Ct. Com. Pl., May 23, 1991) .......................... 5


**Commonwealth Court of Pennsylvania Cases**

Cassidy v. Abington Township, 131 Pa. Commw. 637, 640 (Pa. Commw. Ct. 1990)................. 20

La Frankie v. Miklich, 618 A.2d 1145 (Pa. Commw. Ct. 1992) ................................................. 20


**Supreme Court of Pennsylvania Cases**

Commonwealth v. Wojdak, 466 A.2d 991 (Pa. 1983).................................................................. 5

Liciaga v. Court of Common Pleas, 566 A.2d 246 (Pa. 1989) ..................................................... 4


**Pennsylvania Rules**

42 Pa.C.S. § 8550...................................................................................................................... 20

42 Pa.Cons. Stat. §  4550 ............................................................................................................ 8

42 Pa.Cons. Stat. § 4548 ............................................................................................................. 8


**Treatises**

Restatement 2d Torts § 653, cmt. g ............................................................................................ 15

## Procedural History

On November 14, 2013, Plaintiff initiated this action by the filing of a Complaint (Doc. 1). On May 7, 2014, Plaintiff filed an Amended Complaint (Doc. 20). On June 4, 2014, the Defendants filed a motion to dismiss the Amended Complaint. On June 24, 2014, the Court issued an Order (Doc. 26) enlarging Plaintiff's deadline to file a response to the Defendants' motion to dismiss to on or before July 2, 2014. This brief is filed in opposition to the Defendants' motion.

## Statement of facts

For a complete recitation of the relevant and material facts, the Plaintiff respectfully refers the Court to the Amended Complaint.

## Questions Presented

**I. Should the Court deny the Defendants' motion to dismiss because it is well-settled law that probable cause determinations made at a preliminary hearing or in deciding a motion to quash an information are not dispositive?**

Suggested Answer: <u>Yes</u>

**II. Should the Court deny the Defendants' motion to dismiss because the Defendants are not entitled to absolute immunity when acting as criminal investigators and when presenting a case to an investigative grand jury, and are not immune for their conduct that falls outside the scope of their official prosecutorial duties?**

Suggested Answer: <u>Yes</u>

III. **Should the Court deny the Defendants' motion to dismiss because the Amended Complaint alleges that Linda L. Kelly and Thomas W. Corbett were personally involved in causing John R. Zimmerman's constitutional injury?**

Suggested Answer: <u>Yes</u>

IV. **Should the Court deny the Defendants' motion to dismiss because John R. Zimmerman stated a claim against Anthony J. Fiore and Gary E. Speaks?**

Suggested Answer: <u>Yes</u>

V. **Should the Court deny the Defendants' motion to dismiss because it is premature to decide if the state law malicious prosecution claim is barred by sovereign immunity?**

Suggested Answer: <u>Yes</u>

<u>**Argument**</u>

"A court considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(6) must determine whether the complaint contains sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Powell v. Wetzel</u>, 2014 U.S. Dist. LEXIS 76157 (M.D. Pa., June 3, 2014) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). "Consistent with the Supreme Court's ruling in <u>Bell Atlantic Corporation v. Twombly</u>, and <u>Ashcroft v. Iqbal</u>, the United States Court of Appeals for the Third Circuit requires district courts to engage in a two-part analysis when reviewing a Rule 12(b)(6) motion: first, a court should separate the factual and legal elements of a claim, accepting well-pleaded factual

matter as true and disregarding any legal conclusions; and, second, a court should determine whether the remaining well-pleaded facts sufficiently demonstrate that a plaintiff has stated a 'plausible claim' for relief." Id. (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "Facial plausibility exists when a plaintiff pleads factual content 'that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged.'" Id. "When conducting its analysis, a court must view the complaint's allegations in the light most favorable to the plaintiff." Id. (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). "A court's determination on Rule 12(b)(6) review is not whether the non-moving party 'will ultimately prevail,' but instead whether that party is 'entitled to offer evidence to support the claims.'" Id. (quoting United States ex rel. Wilkins v. United Health Grp., Inc., 659 F.3d 295, 302 (3d Cir. 2011)). "Thus, a court need not find that the plaintiff's claims are 'probable,' rather, a court need only discern whether the complaint contains 'enough facts to raise a reasonable expectation that discovery will reveal evidence' consistent with the complaint." Id. (quoting Phillips, 515 F.3d at 234).

# I. PROBABLE CAUSE DETERMINATIONS MADE AT A PRELIMINARY HEARING OR IN DECIDING A MOTION TO QUASH AN INFORMATION ARE NOT DISPOSITIVE.

The Defendants incorrectly argue that judicial rulings made during a preliminary hearing and in deciding a motion to quash an information, are dispositive with respect to the issue of whether or not the requisite probable cause existed to support the criminal charges in question.

The Supreme Court of Pennsylvania has decided that in a preliminary hearing to determine if a *prima facie* case is established, "the committing magistrate is precluded from considering the credibility of a witness who is called upon to testify[.]"" Liciaga v. Court of Common Pleas, 566 A.2d 246 (Pa. 1989). Therefore, "[a]s a matter of common sense, it is difficult to conclude that a defendant has a *full* and *fair* opportunity to litigate the issue of probable cause, when he cannot attack a witnesses [sic] credibility." Cerami v. Blake, 1993 U.S. Dist. LEXIS 2294 at *12-13 (E.D. Pa. 1993). "As the Third circuit has noted, when determining the reasonableness of an officer in making a probable cause determination, there is often an issue of credibility." See Losch v. Parkesburg, 736 F.2d 903 (3d Cir. 1984).  In this regard, in Doll v. Williams, this Court explained,

> First, a Pennsylvania magisterial district judge determined at a preliminary hearing that Pennsylvania had established a prima facie case for all three charges, and such a determination is "weighty evidence" of probable cause, citing Brandt v. Borough of Palmyra, No. 08-677, 2009 U.S. Dist. LEXIS 27160, at *10-11 (M.D. Pa. Mar. 30, 2009). We reject this argument. That a magisterial district judge

determined that Pennsylvania had established a prima facie case may indeed be "weighty evidence," but it is not determinative, and we must consider Plaintiffs' testimony in the instant case that the two police officers attacked them without warning. If the fact finder believes the plaintiffs, there would be no probable cause.

Second, the defendants rely on the fact that Plaintiffs' counsel, who represented them in the criminal proceedings as well, conceded at the preliminary hearing that there was probable cause for the charges. We reject this argument as well because the statement must be read in context. It was made at a preliminary hearing, where the judicial officer only has to determine if the prosecutor has presented sufficient evidence for a trial to be held, not make credibility determinations. See Commonwealth v. Wojdak, 502 Pa. 359, 369-70, 466 A.2d 991, 996-97 (1983). Hence counsel's statement was not an admission of the truth of the evidence admitted to establish probable cause.

Doll v. Williams, 2009 U.S. Dist. LEXIS 88067 at *3-4 (M.D. Pa., Sept. 24, 2009).

Likewise, in deciding a motion to quash an Information, the Court does not make weight and credibility determinations. See, e.g., Commonwealth v. Heim, 12 Pa. D. & C.4th 310, 313 (Ct. Com. Pl., May 23, 1991) ("It is of course the jury's province to assign the appropriate weight to such testimony based upon the credibility and motives of the witness. We conclude, however, that there is sufficient evidence at this time to take this case to the jury. Based upon the above discussion, the defendant's omnibus pretrial motion to dismiss or quash information shall be denied."). Therefore, since judicial rulings made during a preliminary hearing and in deciding a motion to quash an information are not dispositive, the Defendants' motion should be denied.

## II. THE DEFENDANTS ARE NOT ENTITLED TO ABSOLUTE IMMUNITY WHEN ACTING AS A CRIMINAL INVESTIGATOR AND WHEN PRESENTING TO AN INVESTIGATIVE GRAND JURY, AND ARE NOT IMMUNE FOR ANY CONDUCT OUTSIDE THE SCOPE OF THEIR OFFICIAL PROSECUTORIAL DUTIES.

After presenting case law discussing the doctrines of absolute and qualified immunity, the Defendants stated the following:

> Here, Zimmerman has made a claim of malicious prosecution against all Defendants. To prevail on a Section 1983 malicious prosecution claim, Zimmerman must prove that: (1) *defendant initiated a criminal proceeding*; (2) the criminal proceeding ended in plaintiffs' favor; (3) the proceeding was initiated without probable cause; (4) defendant acted maliciously or for a purpose other than bringing plaintiffs to justice; and (5) plaintiffs suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *DiBella*, 407 F.3d at 602 (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003) (emphasis added). However, Defendants are absolutely immune from suit for any actions taken in initiating a criminal proceeding. *See, e.g.*, *Imbler*, 424 U.S. at 431. Zimmerman has failed to state a claim of malicious prosecution. Therefore, the malicious prosecution claim should be dismissed.

See Defendants' Brief at Section II (emphasis in original). The Defendants' conclusion, however, is devoid of any legal analysis or factual support.

In Kalina v. Fletcher, the Supreme Court of the United States explained the function test for determining whether or not absolute immunity should be provided to a Defendant:

> These cases make it clear that the absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special "esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." Malley, 475 U.S. at 342. Thus,

> in determining immunity, we examine "the nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 229, 98 L. Ed. 2d 555, 108 S. Ct. 538 (1988). This point is perhaps best illustrated by the determination that the senior law enforcement official in the Nation -- the Attorney General of the United States -- is protected only by qualified rather than absolute immunity when engaged in the performance of national defense functions rather than prosecutorial functions. Mitchell v. Forsyth, 472 U.S. 511, 86 L. Ed. 2d 411, 105 S. Ct. 2806 (1985).

Kalina v. Fletcher, 522 U.S. 118, 127 (1997).  It is important to note that the grand jury in the instant matter was an investigating grand jury; not an indicting grand jury. See Amended Complaint.  As such, the grand jury did not have the authority to issue an indictment. See 42 Pa.Cons. Stat. § 4548 ("Except for the power to indict, the investigating grand jury shall have every power available to any other grand jury in the Commonwealth.").  It is also important to note that the purpose of an investigating grand jury is to conduct a criminal investigation using resources that are generally not available to law enforcement. See also 42 Pa.Cons. Stat. §  4550 ("The notice shall allege that one or more of the investigative resources of the grand jury are required in order to adequately investigate the matter."); see also id. at § 4548 ("the power of subpoena, the power to obtain the initiation of civil and criminal contempt proceedings, and every investigative power of any grand jury of the Commonwealth.") This distinction is important with respect to the immunity analysis. It is because of this distinction that the Defendants in this matter are entitled

to qualified immunity, at best, and not absolute immunity.  As the Supreme Court

noted in <u>Buckley v. Fitzsimmons</u>,

> The question, then, is whether the prosecutors have carried their burden of establishing that they were functioning as "advocates" when they were endeavoring to determine whether the bootprint at the scene of the crime had been made by petitioner's foot. A careful examination of the allegations concerning the conduct of the prosecutors during the period before they convened a special grand jury to investigate the crime provides the answer. The prosecutors do not contend that they had probable cause to arrest petitioner or to initiate judicial proceedings during that period. Their mission at that time was entirely investigative in character. A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.

> *It was well after the alleged fabrication of false evidence concerning the bootprint that a special grand jury was empaneled. <u>And when it finally was convened, its immediate purpose was to conduct a more thorough investigation of the crime -- not to return an indictment against a suspect whom there was already probable cause to arrest</u>. Buckley was not arrested, in fact, until 10 months after the grand jury had been convened and had finally indicted him. Under these circumstances, the prosecutors' conduct occurred well before they could properly claim to be acting as advocates.* Respondents have not cited any authority that supports an argument that a prosecutor's fabrication of false evidence during the preliminary investigation of an unsolved crime was immune from liability at common law, either in 1871 or at any date before the enactment of § 1983. It therefore remains protected only by qualified immunity.

<u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 175 (1993) (emphasis added and citations

removed). Likewise, the Defendants in the instant matter are not entitled to absolute

immunity for their actions in advising and guiding law enforcement personnel during

the criminal investigation.  As the Supreme Court stated in <u>Fitzsimmons</u>,

> After *Burns*, it would be anomalous, to say the least, to grant prosecutors only qualified immunity when offering legal advice to police about an unarrested suspect, but then to endow them with absolute immunity when conducting investigative work themselves in order to decide whether a suspect may be arrested. That the prosecutors later called a grand jury to consider the evidence this work produced does not retroactively transform that work from the administrative into the prosecutorial. A prosecutor may not shield his investigative work with the aegis of absolute immunity merely because, after a suspect is eventually arrested, indicted, and tried, that work may be retrospectively described as "preparation" for a possible trial; every prosecutor might then shield himself from liability for any constitutional wrong against innocent citizens by ensuring that they go to trial. When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.

Id. at 176.

Moreover, the Defendants are not entitled to immunity for any actions taken outside the scope of their official prosecutorial duties. See Johnson v. United States DOJ, 2013 U.S. Dist. LEXIS 65234 (M.D. Pa., May 8, 2013). In Florence Wallace, et al. v. Robert J. Powell, et al., in deciding "that judicial immunity does not shelter Ciavarella's 'non-judicial conduct,'" this Court correctly noted,

> coercing probation officers to change their recommendations is outside the role of a judicial officer. Probation officers are to advise the court, not the other way round, on sentencing matters.

Wallace v. Powell, 2014 U.S. Dist. LEXIS 2908 (M.D. Pa., January 9, 2014). Likewise, manipulating an investigative grand jury into returning an indictment by threatening witnesses (Amended Complaint ("AC") at ¶112), destroying evidence (AC at ¶114), presenting false and misleading testimony (AC at ¶115), and

withholding exculpatory evidence (AC at ¶115), do not traditionally fall within the scope of what would traditionally be considered official prosecutorial duties.[1] Similarly, conducting criminal investigations (AC at ¶111), participating in state-wide press conferences (AC at ¶116), and staging perp-walks (AC at ¶¶ 131-34), are also not what would traditionally be considered official prosecutorial duties.

While immunity is a protection from a lawsuit and not just liability, in light of the numerous factual determinations that need to be decided with respect to determining each Defendants' actual specific official duties, it would be premature for this Court to decide the immunity issue at this juncture. Deferring a decision on the immunity issue until after discovery has been completed will not unduly prejudice the Defendants, because at least some claims, asserted against all Defendants, will undoubtedly proceed to trial.

## III. THE AMENDED COMPLAINT ALLEGES THAT LINDA L. KELLY AND THOMAS W. CORBETT WERE PERSONALLY INVOLVED IN CAUSING JOHN R. ZIMMERMAN'S CONSTITUTIONAL INJURY.

The Defendants argue that former Attorney Generals Linda L. Kelly and Thomas W. Corbett did not have the requisite personal involvement in the constitutional harm that the Defendants caused Mr. Zimmerman. Put another way, the Defendants argue that Defendants Kelly and Corbett had no knowledge or

---

[1] Admittedly, a recent report ranked Pennsylvania 5th in the nation for public corruption, however, the fact that corrupt practices and unlawful conduct appear to be the rule instead of the exception in Pennsylvania government, does not change the fact that such conduct does not fall within the scope of what traditionally would be considered a prosecutor's official duties.

involvement in one of the largest public corruption scandals ever investigated by the office that they directed.

The case law is clear, a supervisor may be held personally liable under § 1983 if s/he participated in violating the Plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his/her subordinates violations. See Cosby v. Magnotta, 2014 U.S. Dist. LEXIS 24471 (M.D. Pa. February 24, 2014); A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). As discussed in the Amended Complaint, Defendants Corbett and Kelly each personally participated in, directed, and/or had personal knowledge and acquiesced in the conduct that caused Mr. Zimmerman's constitutional injuries.

The Defendants correctly argue that a person cannot be held liable merely because they possess the title of Attorney General, happen to supervise tortfeasors, or fail to act after the fact.  However, as the Defendants know, that is not what is alleged in the Amended Complaint.

The Defendants incorrectly dismiss facts as legal conclusions, that applying Twombly, would not need to be considered.   However, the purported legal conclusions are clearly factual statements:

- Defendants Corbett and Kelly had actual knowledge of, directed, and acquiesced in, the Zimmerman investigation and the conduct of their Co-defendants related to same.

- Importantly, Defendants Corbett and Kelly had contemporaneous knowledge of the details of the ongoing investigation and their Co-defendants' related wrongdoing, and direct supervisory authority over their Co-defendants.

- Specifically, Defendants Corbett and Kelly knew that their Co-defendants were misusing the criminal justice system to implement and achieve Defendant Corbett's political agenda.

- Defendants Corbett and Kelly had an appreciable opportunity to intervene to stop the wrongdoing, and to protect Zimmerman, but decided instead to participate in causing, or permit, the constitutional injury to occur.

- Kelly had full knowledge of, and personal involvement in directing, all aspects of the Zimmerman ongoing investigation and prosecution.

- On November 12, 2009, Corbett announced, on state-wide television, the Grand Jury presentments and filing of criminal charges against 10 Republicans, including Zimmerman.

- Moreover, Corbett and the Defendants displayed Zimmerman's picture on a poster of Defendants, and arranged for Zimmerman to be on television doing a "perp-walk."

- Corbett and the Defendants knowingly wrongfully communicated to the world that Zimmerman (1) had engaged in criminal conduct, and (2) had engaged in criminal conduct related in any way to "Computergate."

See Amended Complaint at ¶¶ 87-90, 116-18 & 150. The Defendants also ignored factual allegations involving all of the Defendants. The following is a non-exhaustive example of such allegations:

- One or more of the Defendants drafted the Presentment that served as the basis for the criminal charges.

- Rather the Defendants orchestrated the procurement of a Grand Jury Presentment and filed criminal charges against Zimmerman to prevent him from being a witness on behalf of other criminal Defendants, to retaliate against him for his political affiliation and loyalty to Perzel, to retaliate against

him for refusing to commit perjury, and to help bring balance to the number of Republicans and Defendants who were criminally charged by the Defendants in the House Computergate and Bonusgate cases, respectively.

- One or more of the Defendants directed and/or participated in the destruction of exculpatory witness and proffer notes.

- Despite knowing that the "Boxgate" charges had been dismissed against Zimmerman's alleged co-conspirators and that there was not a shred of evidence to support the charges against Zimmerman, the Defendants, who had the authority to dismiss the frivolous criminal charges against Zimmerman, maliciously did not do so.

- For over two years, the Defendants refused to dismiss the criminal charges against Zimmerman, even after Judge Lewis dismissed the related conspiracy charges involving his co-defendants.

See Amended Complaint at ¶¶ 119, 152, 157, 162, 178.

It is a matter of commonsense, and this Court can fairly draw a reasonable inference, that this case did not involve a split second decision that resulted in a constitutional injury. Rather, this case involved a lengthy criminal investigation and criminal prosecution where all of the Defendants, including Mr. Corbett and Ms. Kelly, had months to evaluate the evidence, applicable law, burdens of proof, and their own official responsibilities and actual conduct, to determine what constitutional duties they owed to Mr. Zimmerman.

Since the Amended Complaint clearly alleged that Defendants Kelly and Corbett had the requisite personal involvement in the constitutional harm that the Defendants caused Mr. Zimmerman, the Amended Complaint against them should not be dismissed.

## IV. JOHN R. ZIMMERMAN STATED A CLAIM AGAINST ANTHONY J. FIORE AND GARY E. SPEAKS.

The Defendants incorrectly argue that "Zimmerman does not allege that Speaks initiated a criminal proceeding against him[]" and that "[b]ecause Zimmerman fails to allege that Speaks initiated a criminal proceeding against him, all claims against Speaks should be dismissed."  This is an incorrect statement of the law and a misrepresentation of the allegations stated in the Amended Complaint.

Although a prosecutor may initiate criminal proceedings, a prosecutor does so only after independently reviewing the evidence that is provided to him/her. See Reed v. City of Chicago, 77 F.3d 1049, 1053 (7th Cir. 1996). A police officer [or in this case a special agent] may be held to have "initiated" a criminal proceeding if he knowingly provided false information to the prosecutor or otherwise interfered with the prosecutor's informed discretion. See Reed, 77 F.3d at 1054.  In such cases, "an intelligent exercise of the … [prosecutor's] discretion becomes impossible," and a prosecution based on the false information is deemed "procured by the person giving the false information." Restatement 2d Torts § 653, cmt. g.

Contrary to the Defendants' contention, the Amended Complaint provides in relevant part the following:

- ▪ **Element 1:** The Defendants **collectively** initiated a criminal proceeding against Zimmerman as follows:

- ▪ The Defendants coached and intimidated witnesses during an investigation to ensure that the desired political goal could be achieved.

- ▪ Moreover, the Defendants destroyed exculpatory evidence, so that the evidence could not be presented to a Grand Jury or defense counsel.

- ▪ Defendant Fiore signed, as the affiant, a Criminal Complaint and Affidavit of Probable Cause that failed to identify the elements of the crimes charged, failed to identify facts in support of the crimes charged, failed to identify the destroyed exculpatory evidence that had been possessed by the Defendants, and contained false or misleading statements.

- ▪ The Defendants each acted as discussed herein to misled the Court into permitting the initiation of, and the continuance of, a criminal proceeding against Zimmerman by failing to timely disclose all available evidence and by misrepresenting facts to the Court.

See Amended Complaint at ¶¶ 167-71.  The Defendants further argue that "[t]he Amended Complaint alleges a factual and legal conclusion that Speaks 'confirmed [Fina's] false statement instead of correcting it' to the grand jury with no factual support. (Doc. 20 ¶ 115(c)(iii))".  However, in the Amended Complaint, just prior to the paragraph that the Defendants quote, and incorrectly reference as a conclusion that may be dismissed by the Court, the false statement that Speaks failed to correct is provided in the Amended Complaint. See Amended Complaint at ¶ 115(c).

The Defendants further argue that "Zimmerman does not allege that Fiore misled the prosecution into initiating the criminal proceeding against him or failed to adequately disclose 'all the fruits' of his investigation to the prosecution."  A fair reading of even a few sections of the Amended Complaint, however, proves otherwise:

15

- In response to a juror's question, Fiore responded that the movement of boxes on February 29, 2008, was not recorded in the messenger log.

- Neither Brown nor Fiore, however, explained to the grand jury that per Miller, such matters would not have been recorded in the messenger log.

- On October 29, 2009, despite the fact that no evidence existed to support the claim, Fiore testified that the boxes in question were next to Zimmerman's desk.

- One or more of the Defendants drafted the Presentment that served as the basis for the criminal charges.

- Zimmerman was criminally charged with (1) Hindering Apprehension or Prosecution (18 Pa.C.S. § 5105), a felony of the third degree, (2) Obstructing Administration of Law or Other Governmental Function (18 Pa.C.S. § 5101), a misdemeanor of the second degree, (3) Criminal Conspiracy (Hindering Apprehension or Prosecution) (18 Pa.C.S. § 903), a felony of the third degree, and (4) Criminal Conspiracy (Obstructing Administration of Law or Other Governmental Function) (18 Pa.C.S. § 903), a misdemeanor of the second degree.

- As a result of the criminal charges filed against him, Zimmerman faced a maximum sentence of 18 years of incarceration, and $40,000 in fines.

- On November 12, 2009, Fiore signed and swore to the Criminal Complaint and Affidavit of Probable Cause, which essentially alleged nothing.

- The Criminal Complaint contains the following false statements purportedly meant to explain the nature of the criminal charges:

  > On or about diverse dates between February 25-29, 2008, in Dauphin County, Pennsylvania, the above named defendant, while employed by the Commonwealth of Pennsylvania, intentionally hindered prosecution by concealing or destroying evidence of a crime by having boxes which were the subject of at least one statewide investigating grand jury subpoena moved from their original location to the Speaker Emeritus office area in the State Capital, then having those boxes moved to the House Republican Campaign Committee offices or otherwise hidden from discovery

by the grand jury, thereby committing the offence of Hindering Apprehension or prosecution.

On or about diverse dates between February 25-29, 2008, in Dauphin County, Pennsylvania, the above named defendant, while employed by the Commonwealth of Pennsylvania, intentionally hindered prosecution by concealing or destroying evidence of a crime by having boxes which were the subject of at least one statewide investigating grand jury subpoena moved from their original location to the Speaker Emeritus office area in the State Capital, then having those boxes moved to the House Republican Campaign Committee offices or otherwise hidden from discovery by the grand jury, thereby committing the offence of Obstructing administration of law or other governmental function.

On or about diverse dates between February 25-29, 2008, in Dauphin County, Pennsylvania, the above named defendant agreed with Brett O. Feese and/or John M. Perzel and/or Paul E. Towhey and/or other individuals to intentionally hindered prosecution by concealing or destroying evidence of a crime by having boxes which were the subject of at least one statewide investigating grand jury subpoena moved from their original location to the Speaker Emeritus office area in the State Capital, then having those boxes moved to the House Republican Campaign Committee offices or otherwise hidden from discovery by the grand jury, thereby committing the offence of Criminal conspiracy.

- The Affidavit of Probable Cause is woefully deficient in that it fails to identify the elements of the various crimes charged, fails to identify facts to support the elements of crimes charged, merely refers the reader to the attached Presentment with assurances from the affiant that probable cause exists to support the crimes charged:

Your Affiant has been conducting an investigation of allegations of public corruption within the Pennsylvania Legislature. The OAG's investigation has utilized Statewide Investigating Grand Juries and as a result: the Twenty-Eighth Statewide Investigating Grand Jury has issued Presentment No. 7, which was accepted by Order of the Honorable Barry F. Feudale, Jr., Grand Jury Supervising Judge. This Presentment, which is attached to this affidavit and

17

incorporated by reference, recommends charges be filed by the Attorney General or his designee against the defendant.

Your Affiant has reviewed the above cited Presentment and finds that the factual findings described therein correspond to the OAG investigative findings. Your Affiant has reviewed the sworn testimony given by the witnesses before the Grand Jury and finds that the testimony is consistent with the information contained within the Presentment. Your Affiant has reviewed the evidence presented to the Grand Jury and find [sic] that it comports with the results of the OAG investigative efforts and findings as to the allegations contained in this Police Criminal Complaint.

Your Affiant believes and therefore avers, based upon the above facts, that there is probable cause to believe that the defendant, John R. Zimmerman, committed the acts detailed in this Police Criminal Complaint and all attachments in violation of Pennsylvania law and that warrants should issue for the arrest of the Defendant.

- The 186-page Presentment fails to identify or explain Zimmerman's purported criminal conduct, and in fact, only mentions his name three times.

- The Affidavit of Probable Cause was further defective in that it failed to contain any of the exculpatory evidence discussed herein and possessed by the affiant and Defendants when the Affidavit was signed and presented.

- Defendant Fiore signed, as the affiant, a Criminal Complaint and Affidavit of Probable Cause that failed to identify the elements of the crimes charged, failed to identify facts in support of the crimes charged, failed to identify the destroyed exculpatory evidence that had been possessed by the Defendants, and contained false or misleading statements.

- The Defendants each acted as discussed herein to mislead the Court into permitting the initiation of, and the continuance of, a criminal proceeding against Zimmerman by failing to timely disclose all available evidence and by misrepresenting facts to the Court.

See Amended Complaint at ¶¶ 115(d), 115(f), 119-27, and 170-71.

Since Plaintiff stated a claim against Defendants Speaks and Fiore, the Amended Complaint against them should not be dismissed.

## V. IT IS PREMATURE FOR THE COURT TO DECIDE IF THE STATE LAW MALICIOUS PROSECUTION CLAIM IS BARRED BY SOVEREIGN IMMUNITY.

The Defendants broadly and incompletely argue that the state law claims are barred in their entirety by sovereign immunity. Sovereign immunity protects Commonwealth employees from liability when their actions: (1) cannot fit into one of the nine statutory sovereign immunity exceptions; (2) are not negligent; and (3) occur within the scope of their employment. La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992). The defense of official immunity is not available when it is judicially determined that the employee's acts, which caused the injury, constitute a crime, actual fraud, actual malice or willful misconduct. See 42 Pa.C.S. § 8550; see also Cassidy v. Abington Township, 131 Pa. Commw. 637, 640 (Pa. Commw. Ct. 1990).

As alleged in the Amended Complaint, the Defendants' job duties did not include coaching and intimidating witnesses, destroying exculpatory evidence, filing criminal charges that are not supported by the requisite probable cause, providing false testimony, and misusing the Court system and process for personal or political gain. See Amended Complaint at ¶ 189. The Defendants' conduct was not engaged in for the benefit of their employer, the Commonwealth of Pennsylvania. See id. at

19

¶ 190.  To the contrary, the Defendants' conduct was engaged in for the Defendants' personal and political gain. See id. at ¶ 191.  Discovery is necessary to establish what conduct, if any, fell within the scope of the Defendants' official duties before the sovereign immunity issue can be fairly and correctly decided.

## Conclusion

**WHEREFORE**, Plaintiff respectfully requests that the Court deny the Defendants' motion to dismiss.

**Respectfully Submitted,**

_____                    **Date:  June 30, 2014**
**DEVON M. JACOB, ESQUIRE**
Pa. Sup. Ct. I.D. 89182
Counsel for Plaintiff

**JACOB LITIGATION**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. ZIMMERMAN,** | : Civil Action No.: 1:13-cv-2788 |
| **Plaintiff,** | : |
| | : District Judge: Yvette Kane |
| **v.** | : |
| | : CIVIL ACTION – LAW |
| **THOMAS W. CORBETT, et al.,** | : |
| **Defendants.** | : JURY TRIAL DEMANDED |

## CERTIFICATE OF WORD COUNT

I hereby certify that the word count feature in Microsoft Word 2013 indicates that the argument section of this brief contains 4,900 words.

_____

**DEVON M. JACOB, ESQUIRE**

**Date:  June 30, 2014**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. ZIMMERMAN,** | : Civil Action No.: **1:13-cv-2788** |
| **Plaintiff,** | : |
| | : **District Judge: Yvette Kane** |
| **v.** | : |
| | : **CIVIL ACTION – LAW** |
| **THOMAS W. CORBETT, et al.,** | : |
| **Defendants.** | : **JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to the following person(s) at the following email addresses:

**Lindsey A. Bierzonski, Esquire**
Email: lbierzonski@attorneygeneral.gov

**Timothy P. Keating, Esquire**
Email: tkeating@attorneygeneral.gov


**Date:  June 30, 2014**

_____
**DEVON M. JACOB, ESQUIRE**