**Counsel for Plaintiff**
Devon M. Jacob, Esquire
Email: djacob@jacoblitigation.com
Jacob Litigation
P.O. Box 837
Mechanicsburg, Pa. 17055-0837
(717) 796-7733

**Counsel for Defendants**
Timothy P. Keating, Senior Deputy Attorney General
Email: tkeating@attorneygeneral.gov
Lindsey Bierzonski, Deputy Attorney General
Email: lbierzonski@attorneygeneral.gov
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, Pennsylvania 17120
(717) 705-8580
(717) 772-3561

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. ZIMMERMAN,** | **: Civil Action No.: 1:13-cv-2788** |
| **Plaintiff,** | **: District Judge: Yvette Kane** |
| | : |
| **v.** | **: CIVIL ACTION – LAW** |
| | **: JURY TRIAL DEMANDED** |
| **THOMAS W. CORBETT, et al.,** | : |
| **Defendants.** | : |

## AMENDED JOINT CASE MANAGEMENT PLAN

Having complied with the meet and confer requirements set forth in the LOCAL RULES, or with any orders specifically modifying their application in the above-captioned matter, the parties hereby submit the following Joint Case Management Plan.

## 1.  Principal Issues

1.1     Separately for each party, please give a statement summarizing this case:

**By Plaintiff:** John M. Perzel ("Perzel"), a member of the Republican Party, represented northeast Philadelphia (172nd Legislative District) in the Pennsylvania House of Representatives. In 2000, Democratic challenger Mark Chilutti

1

("Chilutti") came within 92 votes of unseating Perzel, which many believe caused Perzel to devise a plan to make sure that he remained on a trajectory to the Governor's mansion. In 2003, following the death of the then Speaker of the House, Representative Matthew J. Ryan, Perzel became the Speaker of the House; a position which he would hold until the Republicans lost control of the House in the 2006 election.

In 2007, The Patriot News reported that members of the Democratic caucus received bonuses for campaign related work performed on state time. As a result, then Attorney General Tom Corbett was forced to conduct an investigation into the actions of the Legislature.

In September of 2007, Perzel asked Plaintiff, John R. Zimmerman, to arrange a meeting with Corbett. Zimmerman arranged the meeting for mid-afternoon on October 2, 2007, at Raspberry's, which is located in the Hilton Harrisburg, on Second Street, in Harrisburg, Pennsylvania. Those in attendance at the meeting were Perzel; Towhey; Brian Preski, Perzel's former Chief of Staff; Corbett; and Brian Nutt, Corbett's Chief of Staff and Campaign Manager.

At the time, both Corbett and Perzel intended to run for Governor in 2010. Perzel had been weakened by the Chilutti challenge, 2005 pay raise scandal, and the 2006 shift in power in the House. Corbett wanted Perzel to back him for Governor in 2010. Perzel, however, believed that if the Republican Caucus won back the majority in the house in 2008, he had a chance at becoming Governor in 2010. Perzel refused to back Corbett for Governor. Preski, however, agreed to host a fundraiser for Corbett on December 11, 2007, in Philadelphia.

In July of 2008, Corbett announced the filing of criminal charges against 12 ranking Democrats in what would become known as "Bonusgate." After three years of investigation and only capturing Democrats in an investigation that had been forced upon him, "Bonusgate" became an Achilles heel for Corbett. Corbett was accused of targeting Democrats in partisan politics, which threatened his aspirations of becoming Governor.

Corbett's Public Corruption Unit turned its sights to the Republican caucus, specifically to Perzel. The Perzel investigation centered on the alleged use of caucus employees for campaign work; alleged unlawful contracts with consultants GCR; Washington, D.C. based Aristotle Inc.; and Washington state-based Labels & Lists Inc.; and an alleged attempt to falsify evidence to mislead investigators

about the prospective defendants' involvement in criminal activity.

On September 15, 2009, Corbett announced that he was running for Governor. On November 12, 2009, Corbett announced the grand jury presentments and the filing of criminal charges against 10 ranking Republicans, including Perzel, and Perzel's staff, including Zimmerman. The elimination of Perzel's entire team in a single set of arrests cleared the path for Corbett's run for Governor and addressed the claims that Corbett was engaging in partisan politics.

Zimmerman was criminally charged with two counts of conspiracy, and one count each of hindering apprehension and obstruction. Zimmerman's charges were related solely to the alleged cover up, regarding the movement of boxes that allegedly contained campaign material from the Capital, and telephone calls related to same. Essentially, Zimmerman was charged with conspiring to cover up a crime that he did not know had even occurred. On November 17, 2011, all criminal charges against Zimmerman were voluntarily dismissed by the Commonwealth, giving Zimmerman legal standing to seek a civil remedy for the clear violations of his civil rights.

The only surprising fact about the dismissal of the criminal charges lodged against Zimmerman is that it took so long for the dismissal to occur. Ultimately, a total of 26 lawmakers and staffers from both caucuses were prosecuted as a result of a multiyear public corruption investigation that nearly cost Corbett his run for Governor. Ironically, Corbett's public corruption probe is now the subject of an investigation being conducted by Pennsylvania Attorney General Kathleen G. Kane to determine whether Corbett shifted public resources away from the Jerry Sandusky criminal investigation, to the public corruption probe, in the hope of obtaining convictions, to prevent his campaign for Governor from being derailed.

On November 14, 2013, Plaintiff filed the instant matter, pursuant to 42 U.S.C. § 1983, seeking damages. On February 24, 2014, the Court issued an Order (Doc. 14), staying the case until the resolution of the then pending motion to dismiss. On May 7, 2014, Plaintiff filed an Amended Complaint (Doc. 20). Plaintiff asserts the following claims: Count I – Malicious Prosecution pursuant to the Fourth and Fourteenth Amendments, and Count II – Malicious Prosecution pursuant to state law. Despite the fact that the AG's Office conducted the investigation into whether Corbett shifted public resources away from the Jerry Sandusky criminal investigation to the public corruption probe in the hope of obtaining convictions to prevent his campaign for Governor from being derailed,

the AG's Office is presently defending Corbett and his political team in the present matter.

The Defendants filed a motion to dismiss the Amended Complaint (Docs. 21 & 24). On February 10, 2015, the Court issued an Order granting in part and denying in part the motion to dismiss (Doc. 30). Pursuant to Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure, the Defendants were required to file an Answer to the Amended Complaint "within 14 days after notice of the court's action" denying their motion to dismiss. The Defendants have neither requested, nor received, an enlargement of their Answer deadline. On March 12, 2015, Plaintiff filed a request that on Thursday, March 19, 2015, judgment be entered in favor of the Plaintiff and against the Defendants (Doc. 32).

**By Defendants:**   Plaintiff Zimmerman was included with a group of legislators from the Pennsylvania House Republican Caucus who were the target of an investigation and prosecution into public corruption spanning multiple years. The investigation and prosecution is commonly referred to as "Computergate". The lead Computergate defendant was John Perzel, who was Speaker of the House of Representatives from 2003 through 2006. Plaintiff Zimmerman was a member of Perzel's staff. Computergate was the product of a continuing investigation from a prior wave of prosecutions commonly referred to as "Bonusgate."

The criminal charges were the product of a Grand Jury investigation. The Grand Jury issued a Presentment to recommend that the Attorney General bring various criminal charges against numerous people, including Zimmerman. Before trial, the criminal charges against Zimmerman were Nolle Prossed, or withdrawn by the Commonwealth.  Zimmerman now claims that he was malicious prosecuted and that his rights were violated under the Fourth and Fourteenth Amendments and Pennsylvania law.

1.2   The facts the parties <u>dispute</u> are as follows: All facts.

   <u>agree</u> upon are as follows: No facts.

1.3   The legal issues the parties <u>dispute</u> are as follows: All issues.

   agree upon are as follows: No issues.

1.4   Identify any unresolved issues as to service of process, personal

jurisdiction, subject matter jurisdiction, or venue: None.

    1.5    Identify any named parties that have not yet been served: None.

    1.6    Identify any additional parties that Plaintiff or Defendants intend to join: None.

    1.7    Identify any additional claims that Plaintiff or Defendants intend to add: None.

## 2.0    Disclosures

The undersigned counsel certify that they have made the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1) or that they will do so within the time provided by that rule.

    2.1    Separately for each party, list by name and title/position each person whose identity has been disclosed.

### Disclosed by **Plaintiff**:

| Name | Title/Position |
| --- | --- |
| John R. Zimmerman | Plaintiff |
| Thomas W. Corbett | Governor, Commonwealth of Pa. |
| Kathleen G. Kane | Attorney General, Commonwealth of Pa. |
| Geoffrey Moulton | Special Prosecutor |
| John M. Perzel | Former Speaker of the House |
| Brian Preski | Former Perzel Chief of Staff |
| Paul E. Towhey | Former Perzel Chief of Staff |
| Lori Lochetto | Former Perzel Secretary |
| Jill Seaman | Republican Caucus Legal Office |
| Brian Nutt | Former Corbett Chief of Staff |
| Nathan Fineman | Messenger |
| Jared Graybill | Messenger |
| Sandra J. Major | Representative |
| Brett O. Feese | Chief Counsel, Republican Caucus |
| Linda L. Kelly | Former Attorney General |
| Frank G. Fina | Chief Deputy Attorney General |
| K. Kenneth Brown, II | Senior Deputy Attorney General |

| | |
|---|---|
| Michael A. Sprow | Senior Deputy Attorney General |
| Patrick J. Blessington | Deputy Attorney General |
| Anthony J. Fiore | Special Agent, Office of Attorney General |
| Tim Shaffer | Special Agent, Office of Attorney General |
| Gary E. Speaks | Special Agent, Office of Attorney General |

Plaintiff reserves the right to supplement this list and to call upon any parties disclosed in Defendants' list.

### Disclosed by **Defendants**:

| Name | Title/Position |
|---|---|
| John R. Zimmerman | Plaintiff |
| Frank G. Fina | Chief Deputy Attorney General |
| K. Kenneth Brown, II | Senior Deputy Attorney General |
| Michael Sprow | Senior Deputy Attorney General |
| Anthony J. Fiore | Special Agent, Office of Attorney General |
| Gary E. Speaks | Special Agent, Office of Attorney General |
| John M. Perzel | Speaker of the House |
| Thomas Berstrom | Counsel for John Zimmerman |

Defendants reserve the right to supplement this list and to call upon any parties disclosed on Plaintiff's list.

## 3.0   Early Motions

Identify any motion(s) whose early resolution would <u>likely</u> have a significant effect either on the scope of discovery or other aspects of the litigation:

| Nature of Motion | Moving Party | Anticipated Filing Date |
|---|---|---|
| Motion for Summary Judgment | Plaintiffs | 30 days after close of discovery |
| Motion for Summary Judgment | Defendants | 30 days after close of discovery |

**4.0   Discovery**

4.1   Briefly describe any discovery that has been completed or is in progress: None.

4.2   Describe any <u>discovery</u> that all <u>parties agree</u> should be conducted, indicating for each discovery undertaking its purpose or what kinds of information will be developed through it (e.g., "plaintiff will depose Mr. Jones, defendant's controller, to learn what defendant's revenue recognition policies were and how they were applied to the kinds of contracts in this case"):

**By all Parties:** The Parties will serve Interrogatories and Requests for the Production of Documents and respond to same.  The Parties will then conduct the depositions of the Parties and material witnesses.

4.3   Describe any <u>discovery</u> that one or more parties want(s) to conduct but <u>to which another party objects,</u> indicating for each such discovery undertaking its purpose or what kinds of information would be developed through it:

**Defendants:** Defendants object to the depositions of Thomas W. Corbett, Kathleen G. Kane, and Linda L. Kelly at a minimum. Defendants may object to burdensome discovery requests directed at other parties and non-parties with little to no personal involvement in the investigation and prosecution of Zimmerman.

4.4   Identify any <u>subject area limitations on discovery</u> that one or more parties would like imposed, at the first stage of or throughout the litigation:

**By all Parties:** None.

4.5     For each of the following discovery tools, recommend the per-party or preside limitation (specify a number) that should be fixed, subject to later modification by stipulation or court order on an appropriate showing (where the parties cannot agree, set forth separately the limits recommended by plaintiff(s) and by defendant(s)):

4.5.1 Depositions (excluding experts) to be taken by:

Plaintiff: <u>10</u>                    Defendants: <u>10</u>

4.5.2   Interrogatories to be served on each party by:

Plaintiff: <u>25</u>                    Defendants: <u>25</u>

4.5.3 Document production requests to be served on each party by:

Plaintiff: <u>25</u>                    Defendants: <u>25</u>

4.5.4  Requests for admission to be served on each party by:

Plaintiff: <u>25</u>                    Defendants: <u>25</u>

**4.6 Discovery of Electronically Stored Information**

___ Counsel certify that they have conferred about the matters addressed in M.D. Pa LR 26.1 and that they are in agreement about how those matters will be addressed in discovery.

**X** Counsel certify that they have conferred about the matters addressed in M.D. Pa. LR 26.1 and that they are in agreement about how those matters will be addressed in discovery with the following exceptions:

**"(1) Electronically stored information in general**. Counsel shall attempt to agree on steps the parties will take to segregate and preserve electronically stored information in order to avoid accusations of spoliation."  It is expected that in the parties' Initial Disclosures, the parties will provide information regarding the steps taken to segregate and preserve electronically stored information, and when the steps were taken.

**"(2) E-mail information.** Counsel shall attempt to agree on the scope of e-mail discovery and e-mail search protocol." It is expected that in the parties' Initial Disclosures, the parties will identify the search protocol used by to locate relevant e-mail communication for production, and information regarding when the search was conducted.

**"(3) Deleted information.** Counsel shall attempt to agree on whether deleted information still exists, the extent to which restoration of deleted information is needed, and who will bear the costs of restoration." It is expected that in the parties' Initial Disclosures, the parties will provide an explanation regarding how it was determined whether or not deleted information exists, and when the determination was made.

**"(4) Back-up and archival data.** Counsel shall attempt to agree on whether back-up and archival data exists, the extent to which back-up and archival data is needed, and who will bear the cost of obtaining such data." It is expected that in the parties' Initial Disclosures, the parties will provide an explanation regarding how it was determined whether or not back-up and archival data exists, and when the determination was made.

## 5.0   Protective Order

5.1 If entry of a protective order is sought, attach to this statement a copy of the proposed order. Include a statement justifying the propriety of such a protective order under existing Third Circuit precedent.

5.2 If there is a dispute about whether a protective order should be entered, or about certain terms of the proposed order, briefly summarize each party's position below: N/A

## 6.0 Scheduling

6.1 Final date for joining additional parties:

**Plaintiff:** This issue should be governed by Rule 15 of the Federal Rules of Civil Procedure.

**Defendants:** Defendants do not believe any additional parties should be permitted to be joined.

6.2 Final date for amending pleadings:

**Plaintiff:** This issue should be governed by Rule 15 of the Federal Rules of Civil Procedure.

**Defendants:** Defendants do not believe any additional amendments of the Amended Complaint should be permitted.

6.3 All fact discovery commenced in time to be completed by:

**Plaintiff's Proposed Deadline:** September 30, 2015
**Defendants' Proposed Deadline:** July 2016

6.4 All potentially dispositive motions should be filed by:

**Plaintiff's Proposed Deadline:** October 31, 2015
**Defendants' Proposed Deadline:** August 2016

6.5 Reports from retained experts due:

**Plaintiff's Proposed Deadlines:**
from Plaintiff by October 31, 2015
from Defendants by November 30, 2015

**Defendants' Proposed Deadline:**
from Plaintiff by September 2016
from Defendants by October 2016

6.6 Supplementations due

**Plaintiff's Proposed Deadline:** December 15, 2015
**Defendants' Proposed Deadline:** November 2016

6.7 All expert discovery commenced in time to be completed by

**Plaintiff's Proposed Deadline:** January 30, 2016
**Defendants' Proposed Deadline:** December 2016

6.8 This case may be appropriate for trial in approximately:

    240 Days from the filing of the action in this court
    365 Days from the filing of the action in this court
**See ¶ 6.10** Days from the filing of the action in this court

6.9 Suggested Date for the final Pretrial Conference:

    **Plaintiff's Proposed Deadline:** January of 2016
    **Defendants' Proposed Deadline:** January of 2017

6.10 Trial

    6.10.1 Suggested Date for Trial:

    **Plaintiff's Proposed Deadline:** February of 2016
    **Defendants' Proposed Deadline:** February of 2017

**7.0    Certification of Settlement Authority (All Parties Shall Complete the Certification)**

I hereby certify that the following individual has settlement authority for Plaintiff: John R. Zimmerman

I hereby certify that the following individual(s) have settlement authority for Defendants:

Defendants' Counsel:
Timothy P. Keating, Senior Deputy Attorney General
Pennsylvania Office of Attorney General – Civil Law Division
Strawberry Square, 15th Floor
Harrisburg, Pennsylvania 17120

**8.0 Alternative Dispute Resolution ("ADR")**

**Plaintiff:** Plaintiff is willing to participate in good faith in a non-binding mediation.   Moreover, since the taxpayers will be funding the defense of this matter, all efforts should be made to force the parties to resolve their dispute at the earliest opportunity.

**Defendants:** None.

**9.0    Consent to Jurisdiction by a Magistrate Judge**

The parties do not consent to jurisdiction by a magistrate judge at this time.

**10.0    Other Matters**

**Plaintiff:** Plaintiff is seeking leave of Court to file a motion for reconsideration of the Court's Order, dated February 10, 2015, granting in part and denying in part the motion to dismiss (Doc. 30).  Plaintiff respectfully asserts that the Court's grant of absolute immunity to the prosecutorial Defendants is reversible error that if not corrected now, will result in a significant waste of resources that will be spent litigating appeals and possibly the conducting of multiple trials.  As the Supreme Court noted in Buckley v. Fitzsimmons,

> The question, then, is whether the prosecutors have carried their burden of establishing that they were functioning as "advocates" when they were endeavoring to determine whether the bootprint at the scene of the crime had been made by petitioner's foot. A careful examination of the allegations concerning the conduct of the prosecutors during the period before they convened a special grand jury to investigate the crime provides the answer. *The prosecutors do not contend that they had probable cause to arrest petitioner or to initiate judicial proceedings during that period. Their mission at that time was entirely investigative in character. A prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested.*
>
> It was well after the alleged fabrication of false evidence concerning the bootprint that a special grand jury was empaneled. *And when it finally was convened, its immediate purpose was to conduct a more*

*thorough investigation of the crime -- not to return an indictment against a suspect whom there was already probable cause to arrest.* Buckley was not arrested, in fact, until 10 months after the grand jury had been convened and had finally indicted him. Under these circumstances, the prosecutors' conduct occurred well before they could properly claim to be acting as advocates. Respondents have not cited any authority that supports an argument that a prosecutor's fabrication of false evidence during the preliminary investigation of an unsolved crime was immune from liability at common law, either in 1871 or at any date before the enactment of § 1983. It therefore remains protected only by qualified immunity.

Buckley v. Fitzsimmons, 509 U.S. 259, 274 (1993) (emphasis added and citations removed).

In footnote 8, this Court explained that "Presenting the state's case before Pennsylvania's grand jury is not analogous to the investigative functions normally performed by detectives and police officers. Rather, it is uniquely prosecutorial and within in the realm of activity protected by absolute immunity." Plaintiff respectfully disagrees. Buckley, 509 U.S. at 274 ("Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury *after a decision to seek an indictment has been made*.") (emphasis added). When appearing before the *investigative* grand jury in the instant matter, the prosecutors were *not* seeking an indictment, and were functioning in the capacity as investigators, merely trying to determine if probable cause existed to arrest the Plaintiff and others. See id. at 274 ("And when it finally was convened, *its immediate purpose was to conduct a more thorough investigation of the crime -- not to return an indictment against a suspect whom there was already probable cause to arrest.*") (emphasis added).

In further support of its decision, the Court notes that there is "precedent for the proposition that interviews generating evidence for use in grand jury proceedings may still be an activity protected by absolute immunity." In support of this conclusion, however, the Court cited Rose v. Bartle, 871 F.2d 331 (3rd Cir. 1989), a Third Circuit case decided four years prior to the Supreme Court opinion in Buckley, which definitively decided the issue otherwise, and Burns v. Reed, 500 U.S. 478 (1991), a case also decided prior to Buckley.

13

Notably, the Court cites <u>Rehberg v. Paulk</u>, 611 F.3d 828 (11th Cir. 2010) (granting motion to dismiss allegations that prosecutors conspired to make up and present false testimony to the grand jury as protected by absolute immunity). <u>Rehberg</u> is distinguishable from the instant matter in that the prosecutors in <u>Rehberg</u> were before an *indicting* grand jury, not an *investigating* grand jury.  The Eleventh Circuit's decision in <u>Rehberg</u> is consistent with <u>Buckley</u>, whereas the Court's decision in the instant matter is contrary to the Supreme Court's decision in <u>Buckley</u>.

For these reasons, Plaintiff is seeking leave of Court to file a motion for reconsideration of the Court's Order, dated February 10, 2015, granting in part and denying in part the motion to dismiss (Doc. 30).

**Defendants:** None.

## 11.0   Identification of Counsel

**Counsel for Plaintiff:**

_____                    **Date:  March 12, 2015**
**DEVON M. JACOB, ESQUIRE**
Pa. Sup. Ct. I.D. 89182

**JACOB LITIGATION**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com

X ECF User
__ Waiver requested (as separate document)
__ Fed.R.Civ.P. 7.1 (statement filed if necessary)

**Counsel for Defendants:**

Dated: March 12, 2015          */s/ Timothy P. Keating, Esquire*
Timothy P. Keating
Senior Deputy Attorney General
Pennsylvania Office of Attorney General
Civil Law Division
Strawberry Square, 15th Floor
Harrisburg, Pennsylvania 17120
717-705-8580
tkeating@attorneygeneral.gov
PA ID No. 44874
X ECF User
__ Waiver requested (as separate document)
__ Fed.R.Civ.P. 7.1 (statement filed if necessary)

Dated: March 12, 2015          */s/ Lindsey A. Bierzonski, Esquire*
Lindsey A. Bierzonski
Deputy Attorney General
Pennsylvania Office of Attorney General
Civil Law Division
Strawberry Square, 15th Floor
Harrisburg, Pennsylvania 17120
717-772-3561
lbierzonski@attorneygeneral.gov
PA ID No. 308158
X ECF User