IN THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| John R. Zimmerman, | : | 1:13-cv-2788 |
| Plaintiff | : | |
| v. | : | Judge Kane |
| Thomas W. Corbett, Frank G. Fina, | : | |
| K. Kenneth Brown, Michael A. Sprow, | : | |
| Anthony J. Fiore, and Gary E. Speaks, | : | |
| Defendants | : | Jury Trial Demanded |

**Brief in Support of**
**Motion for Judgment on the Pleadings**

Respectfully submitted,

Lavery Law

s/ Frank J. Lavery, Jr.
Pennsylvania Bar No. 42370

s/ Josh Autry
PA Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
jautry@laverylaw.com
Counsel for Defendants

Date: December 14, 2015

# Table of Contents

Table of Authorities...................................................................... iii

I.   Statement of the Case:.......................................................... 1

  A.   Procedural History:............................................................. 1

  B.   Facts: .................................................................................... 1

II.   Question Presented:................................................................ 3

III.   Argument: ............................................................................... 3

  A.   Plaintiff must plead facts that plausibly show why he is entitled
       to relief. ............................................................................... 3

  B.   Plaintiff must show that Defendants violated clearly established
       law. ....................................................................................... 5

  C.   The law is not clear that *Brady* can be violated without a trial
       and conviction. .................................................................... 8

  D.   The law is not clear that destruction of proffer notes violates due
       process................................................................................... 9

  E.   The law is not clear that any allegedly falsified or destroyed
       evidence was exculpatory. ................................................ 14

  F.   The law is not clear that the notes were impeachment evidence.
       16

  G.   The law is not clear that Plaintiff was seized. ............... 18

  H.   Any reasonable agent would have believed probable cause
       existed. .............................................................................. 20

  I.   The agents did not initiate the prosecution. ................... 22

  J.   Agents Fiore and Speaks's actions are presumed reasonable. ... 23

  K.   It is implausible that Defendants fabricated evidence *before the
       grand jury was empaneled*................................................ 24

  L.   It is implausible that then-AG Corbett knew of fabrication or
       destruction of evidence. .................................................. 25

IV.   Conclusion: ....................................................................................... 26

Certification of Counsel .......................................................................... 27

Certificate of Service ............................................................................. 28

## Table of Authorities

## Cases

*Anderson v. Creighton*, 483 U.S. 635 (1987). ...........................................6

*Ankele v. Hambrick*, 286 F. Supp. 2d 485 (E.D. Pa. 2003) ...................19

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074 (2011) .........................................5, 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...............................................3, 26

*Bartow v. Thomas*, 2014 WL 2993786 (W.D. Pa. July 2, 2014) ............18

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007)...................................3, 4

*Bingaman v. Bingaman*, 2009 U.S. Dist. LEXIS 68448
   (M.D. Pa. Aug. 5, 2009) ......................................................................5

*Black v. Montgomery Cty.*, 2015 WL 5568388
   (E.D. Pa. Sept. 21, 2015).....................................................................19

*Brosseau v. Haugen*, 543 U.S. 194 (2004)..............................................6

*Carroll v. Carman*, 135 S. Ct. 348 (2014) ..............................................8

*City & Cnty. of San Francisco v. Sheehan*, 135 S.Ct. 1765 (2015).......7, 8

*Collins v. Jones*, 2015 WL 790055 (E.D. Pa. Feb. 24, 2015)..................19

*Com. v. Lawson*, 2015 WL 6114513 (Pa. Super. July 30, 2015).............17

*Com. v. LeBlanc*, 2015 WL 6663637 (Pa. Super. Sept. 2, 2015).............17

*Com. v. Simmons*, 662 A.2d 621 (Pa. 1995) .....................................16, 18

*Esposito v. Galli*, 2006 WL 2322487 (M.D. Pa. Aug. 9, 2006) ...............19

*Flagg v. Wynder*, 2008 WL 861498 (E.D. Pa. Mar. 27, 2008) ...............16

*Flores v. Satz*, 137 F.3d 1275 (11th Cir. 1998) .......................................9

*Gilles v. Davis*, 427 F.3d 197 (3d Cir. 2005) ..........................................6

*Golya v. Golya*, 2007 WL 2301085 (M.D. Pa. Aug. 9, 2007) ..................19

*Griffin v. Walbert*, 2012 U.S. Dist. LEXIS 4961
   (M.D. Pa. Jan. 17, 2012) ................................................................5, 21

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) .............................................6

*Hunter v. Bryant*, 502 U.S. 224 (1991) ...................................................6

*Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534,
   116 L. Ed. 2d 589 (1991)......................................................................6

*Jones v. Barth*, 2015 WL 221079 (E.D. Pa. Jan. 15, 2015) ...................19

*Kalomiris v. Monroe County Syndicate*, 2009 U.S. Dist. LEXIS 1264 (M.D. Pa. Jan. 8, 2009) ......................................................................... 5

*Lane v. Franks*, 134 S. Ct. 2369 (2014) ..................................................... 8

*Livers v. Schenck*, 700 F.3d 340 (8th Cir. 2012) ...................................... 9

*Luck v. Mount Airy No. 1,* 901 F. Supp. 2d 547 (M.D. Pa. 2012) .......... 18

*Lum v. Bank of Am.*, 361 F.3d 217 (3d Cir. 2004) ................................... 4

*Malley v. Briggs*, 475 U.S. 335, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986) ............................................................... 21, 24

*McCune v. City of Grand Rapids*, 842 F.2d 903 (6th Cir.1988) .............. 9

*Morgan v. Gertz*, 166 F.3d 1307 (10th Cir. 1999) .................................... 9

*Mullenix v. Luna*, 136 S.Ct. 305 (Nov. 9, 2015) ...................................... 7

*Mustafa v. Superintendent, SCI Dallas*, 2004 WL 1078500 (E.D. Pa. May 13, 2004) .................................................................... 16

*Orsatti v. N.J. State Police*, 71 F.3d 480 (3d Cir. 1995) ........................ 24

*Penberth v. Krajnak*, 347 F. App'x 827 (3d Cir. 2009) ........................... 18

*Plumhoff v. Rickard*, 134 S. Ct. 2012 (2014) ........................................... 7

*Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012). .............................. 6, 8

*Revell v. Port Auth. of NY, NJ*, 598 F.3d 128 (3d Cir. 2010) .................. 3

*Rogala v. District of Columbia*, 161 F.3d 44 (D.C.Cir.1998) ................... 9

*Schultz v. Hughesville Borough*, 2011 WL 3273076 (M.D. Pa. July 29, 2011 .................................................................. 19

*Shelley v. Wilson*, 339 Fed. Appx. 136 (3d Cir. 2009) ......................... 4, 5

*Startzell v. City of Philadelphia*, 533 F.3d 183 (3d Cir. 2008) .............. 20

*Stolarik v. City of Wilkes-Barre*, 2013 U.S. Dist. LEXIS 155788 (M.D. Pa. Oct. 30, 2013) .................................................................. 22

*Taylor v. Barkes*, 135 S.Ct. 2042 (2015) .................................................. 8

*Taylor v. Waters*, 81 F.3d 429 (4th Cir.1996) .......................................... 9

*United States v. Myers*, 308 F.3d 251 (3d Cir. 2002) ............................. 21

*White v. Glenn*, 2014 WL 5431200 (E.D. Pa. Oct. 27, 2014) ................. 18

*Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000) ....................................... 21

*Wiltz v. Middlesex Cnty. Office of Prosecutor*, 249 F. App'x 944 (3d Cir. 2007) ................................................................................................ 18

*Wright v. City of Phila.*, 409 F.3d 595 (3d Cir. 2005) ............................. 21

## Statutes

18 Pa.C.S. §5101.......................................................................................20

18 Pa.C.S. §5105.......................................................................................20

## I.   Statement of the Case:

### A.   Procedural History:

Ruling on Defendants' motion to dismiss, the Court dismissed several of Plaintiff's claims. Plaintiff's remaining claims are that 1) prosecutors and agents threatened witnesses before the grand jury proceedings began, 2) prosecutors and agents destroyed proffer notes, and 3) agents maliciously prosecuted Plaintiff without probable cause.

### B.   Facts:

The grand jury issued a subpoena to the House Republican Caucus on February 25, 2008, for campaign material. Ex. 4. A man called House Republican Campaign Committee from Plaintiff's phone line to say that a delivery of boxes of campaign material would be made, AC ¶69, 114(d) and 115(f), Plaintiff was normally at his desk, ¶146, and campaign material was then moved to HRCC, ¶69.

During the grand jury proceedings, witness proffer notes were destroyed pursuant to OAG policy when witnesses testified before the grand jury. *See* AC ¶114. Judge Lewis opinions on notes (ex. 1-2); *Com.*

*v. Feese*, 79 A.3d 1101 (Pa. Super.), reargument denied (2013), appeal denied, 94 A.3d 1007 (Pa. 2014).[1]

After the grand jury recommended the charges against Plaintiff, and Agent Fiore charged Plaintiff with obstruction of justice, hindering prosecution, and conspiracy to each. Ex. 6. Plaintiff claims that notes do not exist for meetings with three grand jury witnesses against him: Nathan Fineman (the messenger who moved boxes within Representative Perzel's office), Lori Lochetto (Perzel's secretary who had boxes moved to Perzel's office and then to HRCC), and George Matthews (the HRCC employee who testified that a man called to tell him to expect a delivery of boxes). AC ¶114. At no point does Plaintiff explain how the proffer notes of these witnesses would have helped him.

Judge Wenner found probable cause to file charges (ex. 6 pp. 1-2), Judge Wenner then declined to dismiss the case at Plaintiff's preliminary hearing (ex. 7 p. 131), and Judge Lewis also declined to

---

[1]Plaintiff erroneously states that Judge Lewis dismissed the Boxgate charges for his co-defendants, which Plaintiff states resulted from the destruction of notes. AC ¶154-55. Actually, Judge Lewis held (and the Superior Court agreed) that the destruction of any notes did not violate the law or OAG policy. Judge Lewis opined about the prudence behind the practice. At the guilty plea or sentencing for every co-defendant, the Commonwealth dropped the Boxgate charges.

dismiss the case on a habeas motion (ex. 3 p. 2). The OAG later dropped the charges.

## II.   Question Presented:

Does Plaintiff state a claim for relief? No.

## III.   Argument:

### A.   <u>Plaintiff must plead facts that plausibly show why he is entitled to relief.</u>

"A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." *Revell v. Port Auth. of NY, NJ*, 598 F.3d 128, 134 (3d Cir. 2010). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

The claim must be "plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* This Court is "not bound to accept as true a legal conclusion couched as a factual allegation" *Id.* (quoting *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679.

"In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Shelley v. Wilson*, 339 Fed. Appx. 136, 137 n. 2 (3d Cir. 2009) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)). In *Shelley*, the Third Circuit held that a district court properly considered a "police incident report filed by the victim, the

criminal complaint and affidavit of probable cause for an arrest

warrant, the state court docket, and the Pennsylvania Superior Court's

decision affirming Shelley's judgment of sentence…" *Id.* at 137.

The Third Circuit explained:

> [T]he documents… were either referenced in
> Shelley's complaint, were matters of public
> record, and/or were integral to the false arrest
> claim. Accordingly, we have no difficulty
> concluding that the District Court properly
> considered the documents.

*Id.* at 137 n.2. *See also Griffin v. Walbert*, 2012 U.S. Dist. LEXIS 4961

at n.3 (M.D. Pa. Jan. 17, 2012) (considering warrant); *Bingaman v.*

*Bingaman*, 2009 U.S. Dist. LEXIS 68448 at n.1 & n.2 (M.D. Pa. Aug. 5,

2009) (judicial notice of dockets); *Kalomiris v. Monroe County*

*Syndicate*, 2009 U.S. Dist. LEXIS 1264 at n.8 (M.D. Pa. Jan. 8, 2009).

## B.   Plaintiff must show that Defendants violated clearly established law.

"Qualified immunity gives government officials breathing room to

make reasonable but mistaken judgments about open legal questions."

*Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2085 (2011). "The qualified

immunity standard 'gives ample room for mistaken judgments by

protecting all but the plainly incompetent or those who knowingly

violate the law.'" *Gilles v. Davis*, 427 F.3d 197, 203 (3d Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)).

Officials have qualified immunity so long as their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts consider "the state of the existing law at the time of the alleged violation and the [specific] circumstances confronting the officer." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 253 (3d. Cir. 2010).

The law is "clearly established" when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that [his conduct] violates that right." *Anderson v. Creighton*, 483 U.S. 635, 649 (1987). "'[T]he right allegedly violated must be established, 'not as a broad general proposition,' *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam), but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official, [*Anderson*, 483 U.S. at 640]." *Reichle v. Howards*, 132 S. Ct. 2088, 2094 (2012).

The Supreme Court reiterated this year, "Qualified immunity is no immunity at all if clearly established law can simply be defined as

6

the right to be free from unreasonable searches and seizures." *City &
Cnty. of San Francisco v. Sheehan*, 135 S.Ct. 1765, 1776 (2015). In
recent years and <u>even last month</u>, the Supreme Court has made clear
that the analysis must be fact-specific. *See also Mullenix v. Luna*, 136
S.Ct. 305, 308 (Nov. 9, 2015) (per curiam) (Analysis "must be
undertaken in light of the specific context of the case… Such specificity
is especially important in the Fourth Amendment context, where the
Court has recognized that it is sometimes difficult for an officer to
determine how the relevant legal doctrine, here excessive force, will
apply to the factual situation the officer confronts.") (citations omitted);
*Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014) ("[D]oing so avoids the
crucial question whether the official acted reasonably in the particular
circumstances that he or she faced."); *al-Kidd*, 131 S. Ct. at 2084 ("We
have repeatedly told courts… not to define clearly established law at a
high level of generality. The general proposition, for example, that an
unreasonable search or seizure violates the Fourth Amendment is of
little help in determining whether the violative nature of particular
conduct is clearly established.") (citations omitted).

7

In other words, not only must the constitutional standard be clearly established, but **the case law must be clear enough to show the prosecutors and agents that they, in fact, violated the constitution**. To defeat qualified immunity, "existing precedent must have placed the statutory or constitutional question beyond debate." *Carroll v. Carman*, 135 S. Ct. 348, 350 (2014) (per curiam) (unanimous). The Court further grants qualified immunity on questions where judges disagree: "[i]f judges thus disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy." *Reichle*, 132 S. Ct. at 2096 (citation omitted).

The Supreme Court has repeatedly found that qualified immunity shields officials where circuit precedent is unclear on the point or distinguishable. *Mullenix*, 136 S.Ct. at 308-12; *Taylor v. Barkes*, 135 S.Ct. 2042 (2015) (per curiam) (unanimous); *Sheehan*, 135 S.Ct. 1765; *Carroll*, 135 S.Ct. at 350; *Lane v. Franks*, 134 S.Ct. 2369, 2383 (2014) (unanimous); *Reichle*, 132 S.Ct. at 2094.

## C.   The law is not clear that *Brady* can be violated without a trial and conviction.

It is not clear that *Brady* can be violated without a trial and conviction. In fact, the clear weight of authority bars *Brady* claims

without a trial and conviction. *Livers v. Schenck*, 700 F.3d 340, 359 (8th Cir. 2012); *Morgan v. Gertz*, 166 F.3d 1307, 1310 (10th Cir. 1999); *Flores v. Satz*, 137 F.3d 1275, 1278 (11th Cir. 1998); *Rogala v. District of Columbia*, 161 F.3d 44, 55–56 (D.C.Cir.1998) (per curiam); *Taylor v. Waters*, 81 F.3d 429, 435–36 & n. 5 (4th Cir.1996); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir.1988).

The same holds true for the alleged destruction of impeachment evidence because Plaintiff can't impeach witnesses who never testify at trial against him. *See Com. v. Feese*, 79 A.3d 1101, 1113 (Pa. Super. 2013) ("In any event, neither Haines, Culp, nor Cherry McGill actually testified against Appellant at his trial. Thus, any value of prior inconsistent statements as impeachment material was rendered moot by their absence."). Because Plaintiff did not have a trial, much less a conviction, Plaintiff cannot bring claims for fabrication or destruction of evidence.

### D.   The law is not clear that destruction of proffer notes violates due process.

The destruction of the notes as required by official OAG policy in no way violates clearly established law under *Brady*, and the Superior Court affirmed Judge Lewis's decision saying so. *See* Judge Lewis

opinions on notes (ex. 1-2); *Com. v. Feese*, 79 A.3d 1101 (Pa. Super.), reargument denied (2013), appeal denied, 94 A.3d 1007 (Pa. 2014). Put simply, the practice of destroying proffer notes is not a clearly unconstitutional practice such that the prosecutors and agents should have known that the Constitution required them to violate OAG policy.

Although Plaintiff did not file any motion alleging prosecutorial misconduct after severance of his case, all of his co-defendants did. In ruling on their motion, Judge Lewis extensively reviewed the questions of whether the destruction of proffer notes violated due process and held that "no due process violation took place." Ex. 1 p. 3. Although Judge Lewis's decision is not binding on Plaintiff or this Court, his conclusion and the Superior Court's decision to affirm show that the prosecutors and agents acted reasonably when they followed OAG policy to destroy the proffer notes.

Judge Lewis explained:

> This court wishes to emphasize that the destruction of the notes is not inherently improper. Given the dramatic and negative connotation of the phrase "destruction of evidence," it is important to bear in mind that the destruction of such notes by investigators in a criminal matter is a common, and prudent,

10

practice. Such notes are very often shorthand and incomplete in nature, intended to serve only as an aid to the investigator in the preparation of his or her formal report. Little good would be served, and much confusion and administrative difficulty would be created, by a rule requiring preservation and disclosure of both the investigative report and the rough notes which underlie it.

In this instance, this court finds that the Commonwealth did not miscarry its obligations under *Brady* by executing its policy with respect to the proffer notes. There is no evidence of record to suggest materially exculpatory information was suppressed or lost. Inasmuch as Defendants contend the notes might have provided evidence of prior inconsistent statements made by potential Commonwealth witnesses, this court finds that such evidence is preserved in the Report of Investigation and the notes of testimony of the grand jury proceedings. Indeed, the examples of prior inconsistent statements included by Defendants in their Motion demonstrate the fertile basis for cross examination supplied.

This court acknowledges the argument made by Defendants that not all the proffer interviews conducted were properly memorialized in the Report of Investigation and that the grand jury transcripts do not adequately capture possible underlying inconsistent statements.

11

> However, Defendants will have broad latitude on
> cross examination to explore any such statements
> and present issues of credibility to the jury.

Ex. 1 pp. 3-4. Judge Lewis later reiterated during Brett Feese's appeal:

> [L]ittle good would be served, and much confusion
> and administrative difficulty would be created, by
> a rule requiring preservation and disclosure of
> both the investigative report and the rough notes
> which underlie it. …

> The Appellant was provided with the Grand Jury
> transcripts of 94 witnesses which included
> witnesses who testified at trial. Defense counsel
> had ample opportunities to cross-examine
> witnesses based on inconsistent statements made
> before the Grand Jury and counsel exercised
> those opportunities. This Court finds that the
> materials disclosed to the defense were sufficient
> to survive a claim of a *Brady* violation. …

> In disposing of the Joint Motion, this Court heard
> oral argument, reviewed the authority submitted
> by the parties, and reviewed the case record. This
> Court determined that a per se *Brady* violation
> had not occurred as the notes had been destroyed
> in accordance with OAG internal policy.
> Additionally, the evidence of record did not
> indicate that *Brady* material had been lost or
> suppressed. The Order stated that the defense
> would be afforded broad latitude on cross-
> examination during the trial and was afforded
> such latitude. Therefore, this Court finds that it

12

> appropriately determined that an evidentiary had not been warranted in disposition of the Joint Motion. …
>
> The Court extensively evaluated the newly-disclosed documents to determine which of the suppressed materials would have been admissible, and, if admissible, would have been favorable to the defendant and material to the outcome of the trial.
>
> However, as previously expressed in this opinion, the evidence of record here did not indicate that *Brady* materials had been lost or suppressed. The defense was supplied with the OAG's ROI along with the Grand Jury transcripts of the testimony of 94 witnesses that included the transcript of each trial witness.

Ex. 2 pp. 9, 12-14.

On appeal, the Superior Court agreed, after quoting the OAG policy, that "the OAG policy <u>requires</u> the destruction of interview notes once details have been memorialized in the ROI, with the noted exception of signed and dated witness statements, and substantially verbatim memorializations of witness statements." *Feese*, 79 A.3d at 1110 (emphasis by Court). Under these rulings, it is clear that the prosecutors and agents did not violate clearly established law when

they destroyed proffer notes as required by OAG policy. In fact, the clear law shows that their actions were reasonable.

### E. The law is not clear that any allegedly falsified or destroyed evidence was exculpatory.

Plaintiff does not explain what witnesses falsified their testimony against him at the prosecutors and agents' behest, much less plausibly show how the altered testimony would have made a difference at his trial (if he had one). Plaintiff mostly complains of exculpatory witnesses within his knowledge that he believes the prosecutors and agents should have presented before the grand jury, but Plaintiff does not show a *Brady* violation because he could have called every exculpatory witness at his trial.

Nor does Plaintiff show how the destroyed proffer notes would have been exculpatory for him. Notably, unlike every single co-defendant, Plaintiff did not challenge the destruction of the notes or make any *Brady* claim at all in his criminal case.

On Feese's appeal, the Superior Court recognized that the destroyed proffer notes could not have prevented the use of exculpatory witnesses because Feese could still call the witnesses to testify:

> To the extent that they could have provided
> exculpatory testimony, there is nothing of record
> to indicate why these witnesses could not have
> been called by the defense, particularly since the
> transcripts of the Grand Jury were clearly
> available to the defense before trial, and these
> particular excerpts from the Grand Jury
> testimony were set forth in the defendants' Joint
> Motion to Dismiss and, thus, known to Appellant
> prior to his trial. It is only the prior statements,
> and not the witnesses, that would have been
> rendered unavailable if the OAG destroyed
> interview notes related to those witnesses.

*Feese*, 79 A.3d at n.7. The same holds true for Plaintiff. Plaintiff does not plausibly show how the notes would have helped him.

In paragraph 114, Plaintiff claims that notes do not exist for meetings with three grand jury witnesses against him: Nathan Fineman (the messenger who moved boxes within Representative Perzel's office), Lori Lochetto (Perzel's secretary who had boxes moved to Perzel's office and then to the House Republican Campaign Committee), and George Matthews (the HRCC employee who testified that a man called telling him to expect a delivery of boxes). At no point does Plaintiff explain how the proffer notes of these witnesses would

have helped him at trial (if he had one). Thus, Plaintiff does not plead a *Brady* violation.

## F. <u>The law is not clear that the notes were impeachment evidence.</u>

The law is not clearly established that Plaintiff could have used the proffer notes for impeachment anyway. In Pennsylvania, "A written report which is only a summary of the words of the victim and not verbatim notes from the victim cannot be used to impeach the witness on cross-examination since it would be unfair to allow a witness to be impeached on a police officer's interpretation of what was said rather than the witness' verbatim words." *Com. v. Simmons*, 662 A.2d 621, 638 (Pa. 1995). *See also Flagg v. Wynder*, 2008 WL 861498, at *13-14 (E.D. Pa. Mar. 27, 2008) (citing *Simmons*); *Mustafa v. Superintendent, SCI Dallas*, 2004 WL 1078500, at *4 (E.D. Pa. May 13, 2004) *R&R adopted*, 2004 WL 1490399 (June 30, 2004).

In a recent, albeit unpublished opinion, the Superior Court strongly rejected an identical claim as "baseless":

> Instantly, the prosecutor's notes could not be used as impeachment evidence as a prior inconsistent statement because the notes were not verbatim. *Simmons, supra; Commonwealth v. Woods*, 710 A.2d 626, 630 (Pa.Super.1998)

16

(summary of a witness' statement is inadmissible as impeachment evidence unless witness adopted that statement as his own); Pa.R.E. 613. Similarly, the prosecutor's notes could not be used as substantive evidence. *Commonwealth v. Lively*, 610 A.2d 7, 10 (Pa.1992) ("a prior inconsistent statement may be used as substantive evidence only when the statement is given under oath at a formal legal proceeding; or the statement had been reduced to a writing signed and adopted by the witness; or a statement that is a contemporaneous verbatim recording of the witness's statements."); Pa.R.E. 803.1. Moreover, the notes… are plainly work product and do not even bear any semblance of transcribed interviews with witnesses. … Appellant's claims to the contrary are baseless and border on frivolous. Thus, the prosecutor's handwritten notes were not improperly withheld.

*Com. v. LeBlanc*, 2015 WL 6663637, at *3-4 (Pa. Super. Sept. 2, 2015).

*See also Com. v. Lawson*, 2015 WL 6114513, at *6 (Pa. Super. July 30, 2015) ("The court properly prohibited defense counsel from trying to impeach Officer Sampson's credibility with statements the officer did not make or adopt.").

These unpublished Superior Court decisions are not binding on this Court, but they show that the agents and prosecutors acted reasonably in believing that—under the clearly established law—the

17

proffer notes were not impeachment material. Under *Simmons*, which is binding, the prosecutors and agents did not violate clear law in destroying notes that Plaintiff could not use for impeachment even if he had a trial.

### G.   The law is not clear that Plaintiff was seized.

Plaintiff does not allege any Fourth Amendment "seizure." The Third Circuit has recognized that a pre-filing arrest alone cannot support a malicious prosecution claim:

> While Wiltz's complaint does allege that she was arrested, it does not allege that she was incarcerated, required to post bond, maintain contact with Pretrial Services, refrain from traveling, or that she endured any other "post-indictment" deprivation of liberty as a result of the legal proceedings.

*Wiltz v. Middlesex Cnty. Office of Prosecutor*, 249 F. App'x 944, 949 (3d Cir. 2007). *See also Penberth v. Krajnak*, 347 F. App'x 827, 829 (3d Cir. 2009) (arrest <u>and</u> 35-40 minute detention insufficient); *Luck v. Mount Airy No. 1,* 901 F. Supp. 2d 547, 556 (M.D. Pa. 2012) (arrest not enough); *White v. Glenn*, 2014 WL 5431200, at n.4 (E.D. Pa. Oct. 27, 2014) (same); *Bartow v. Thomas*, 2014 WL 2993786, at *5 (W.D. Pa. July 2, 2014) (same).

Plaintiff was released on unsecured bail.[2] While some courts have held that <u>secured</u> bail can be a Fourth Amendment seizure, courts have repeatedly held that <u>unsecured</u> bail is not. *See Black v. Montgomery Cty.*, 2015 WL 5568388, at *3 (E.D. Pa. Sept. 21, 2015); *Collins v. Jones*, 2015 WL 790055, at *9 (E.D. Pa. Feb. 24, 2015); *Jones v. Barth*, 2015 WL 221079, at *4 (E.D. Pa. Jan. 15, 2015); *Schultz v. Hughesville Borough*, 2011 WL 3273076, at *8 (M.D. Pa. July 29, 2011); *Golya v. Golya*, 2007 WL 2301085, at *7 (M.D. Pa. Aug. 9, 2007); *Esposito v. Galli*, 2006 WL 2322487, at *9 (M.D. Pa. Aug. 9, 2006); *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 497 (E.D. Pa. 2003) aff'd, 136 F. App'x 551 (3d Cir. 2005).

Plaintiff also alleges that he had to surrender his passport, but the law is not clearly established that requiring pre-approval for international travel or restricting travel to within the United States is a Fourth Amendment seizure. Plaintiff was free to move about the country. Accordingly, Plaintiff cannot show that he suffered a Fourth Amendment seizure under the clearly established law.

---

[2] https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-22-CR-0002524-2010

### H.   Any reasonable agent would have believed probable cause existed.

The grand jury issued a subpoena to the House Republican Caucus on February 25, 2008, for campaign material. Ex. 4. Plaintiff concedes that a man called the House Republican Campaign Committee from Plaintiff's phone line to tell the HRCC to expect a delivery of boxes of campaign material, AC ¶69, 114(d) and 115(f), Plaintiff was normally at his desk, ¶146, and boxes of campaign material was then moved to HRCC, ¶69. The agents clearly had probable cause to believe he obstructed justice, 18 Pa.C.S. §5101, hindered prosecution, 18 Pa.C.S. §5105, and conspired to do so, 18 Pa.C.S. §903.

Plaintiff must show "lack of probable cause." *Startzell v. City of Philadelphia*, 533 F.3d 183, 204 (3d Cir. 2008). "[T]he establishment of probable cause as to any one charge is sufficient to defeat [Plaintiff's] Fourth Amendment claims." *Id.* at n.14. The Third Circuit has explained:

> Probable cause exists whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested.

20

*U.S. v. Myers*, 308 F.3d 251, 255 (3d Cir. 2002). "A police officer may be liable for civil damages for an arrest if 'no reasonable competent officer' would conclude that probable cause exists." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (quoting *Malley*, 475 U.S. at 341).

Because "[p]robable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction, ... the evidentiary standard for probable cause is significantly lower than the standard which is required for conviction." *Wright v. City of Phila.*, 409 F.3d 595, 602 (3d Cir. 2005). The evidence here clearly meets this low bar.

Plaintiff's claims of innocence "do not go to the appropriate probable cause inquiry." *Griffin v. Walbert*, 2012 U.S. Dist. LEXIS 4961, *22 (M.D. Pa. Jan. 17, 2012). In *Griffin*, this Court, recognizing the objective standard for probable cause, held that claims of improper motive could not give rise to an inference that the officers lacked probable cause to arrest:

> Plaintiff's well-pleaded facts may point to
> unseemly behavior on the part of some public
> officials and questionable motivation for actions
> taken, but, within the relevant legal framework,
> they do not even create an inference of

21

> misconduct which would entitle the Plaintiff to
> relief.

*Id.* at *22-23.

Whether Plaintiff is actually guilty is not for this Court to decide. The fact is that the agents had reason to believe that Plaintiff violated the law. *See also Stolarik v. Wilkes-Barre*, 2013 U.S. Dist. LEXIS 155788, *12 (M.D. Pa. Oct. 30, 2013) ("Stolarik might have turned out to be correct, but at the time of the arrest it was reasonable for an officer confronted with these facts to discount Stolarik's statements as self-serving.").

## I.   <u>The agents did not initiate the prosecution</u>.

In ruling on the motion to dismiss, this Court held "an officer may… be considered to have initiated a criminal proceeding if he or she knowingly provided false information <u>to the prosecutor</u> or otherwise <u>interfered with the prosecutor's informed discretion</u>." *Zimmerman* v, 2015 WL 539783, at *10 (emphasis added) (citation omitted).

Notably, the destruction of notes could not possibly fall within this exception and the prosecutors and agents destroyed the notes pursuant to OAG policy. It is implausible that the agents destroyed the notes

without prosecutor knowledge; in fact, Plaintiff found out that the notes were destroyed <u>from the prosecutors</u>.

As for falsification of evidence, Plaintiff does not allege that the agents provided false information <u>to the prosecutors</u> or otherwise interfered with prosecutorial discretion. Rather, Plaintiff alleges the opposite: that the agents worked in tandem with the prosecutors to provide false information to the Court.

It is simply implausible that the agents duped the prosecutors in any way into taking Plaintiff's case; to the contrary, Plaintiff claims that the prosecutors were in on it. Accordingly, the agents cannot be liable for malicious <u>prosecution</u> under the clearly established law.

**J.     <u>Agents Fiore and Speaks' actions are presumed reasonable.</u>**

The law presumes that Agents Fiore and Speaks acted reasonably. The Third Circuit has held that, "a police officer who relies in good faith on a prosecutor's legal opinion that the arrest is warranted under the law is presumptively entitled to qualified immunity from Fourth Amendment claims premised on a lack of probable cause." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 255-56 (3d Cir. 2010). Likewise, in the case of an arrest warrant approved by a judge, "only where the

warrant application is 'so lacking in indicia of probable cause as to render official belief in its existence unreasonable,' will the officer lose the shield of immunity." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). *See also Kelly*, 622 F.3d at 254-55 (recognizing *Malley* is still good law).

The basis for arrest was confirmed when Judge Wenner  initially found probable cause to file charges (ex. 6 pp. 1-2), Judge Wenner later declined to dismiss the case at a preliminary hearing (ex. 7 p. 131), and Judge Lewis also declined to dismiss the case on a habeas motion (ex. 3 p. 2). As this Court has recognized, these determinations are "very strong evidence" of probable cause. *Zimmerman*, 2015 WL 539783, at *5. For qualified immunity purposes, these determinations are enough to show that Agents Fiore and Speaks are not clearly incompetent—a very low bar. Plaintiff does not overcome their presumption of reasonableness under *Kelly.*

### K.   It is implausible that Defendants fabricated evidence *before the grand jury was empaneled.*

This Court initially found "that a fuller record is necessary before it can decide whether the prosecutorial defendants are entitled to [absolute] immunity on claims that they fabricated evidence prior to the

initiation of the grand jury proceedings." *Zimmerman*, 2015 WL 539783, at *8 (emphasis added). However, it is clear that all evidence against Plaintiff surfaced after the grand jury proceedings began as Plaintiff was charged with moving boxes to hide evidence in violation of February 25th, 2008, <u>grand jury subpoena</u>. Ex 4 & 5 (2-25-08 & 2-29-08 subpoenas). Accordingly, the prosecutors are absolutely immune for all claims of evidence fabrication.

### L.   <u>It is implausible that then-AG Corbett knew of fabrication or destruction of evidence.</u>

In paragraphs 87-90, Plaintiff asserts that then-AG Corbett and not-yet AG Kelly knew of and directed the fabrication and destruction of evidence. These allegations cannot survive under *Iqbal*. The Court in *Iqbal* rejected similar conclusory allegations that AG Ashcroft and FBI Director Mueller knew of and directed Iqbal's harsh treatment for discriminatory reasons. 556 U.S. at 680-81. Plaintiff's conclusory allegations of knowledge and direction must also fail.

Plaintiff's allegations are implausible. Notably, Plaintiff lumps Corbett and Kelly in these paragraphs as one in the same even though, as this Court has recognized, Kelly did not become AG until years after Plaintiff was charged. Plaintiff does not claim that Corbett participated

in witness interviews or personally destruction notes. Plaintiff simply does not show that Corbett knew of exculpatory or fabricated evidence. With no idea what level of involvement Corbett has, Plaintiff simply guesses (as he guessed with Kelly). These conclusory allegations cannot suffice under *Iqbal*.

## IV.   Conclusion:

For these reasons, this Court should dismiss all claims.

<div style="margin-left: 40%;">

Respectfully submitted,

Lavery Law

s/ Frank J. Lavery, Jr.
Pennsylvania Bar No. 42370

s/ Josh Autry
PA Bar No. 208459
225 Market Street, Suite 304
P.O. Box 1245
Harrisburg, PA 17108-1245
(717) 233-6633 (phone)
(717) 233-7003 (fax)
jautry@laverylaw.com
Counsel for Borough of Starrucca

</div>

Date: December 14, 2015

## Certification of Counsel

I certify that this brief complies with the word limit in Local Rule 7.8. The brief contains 4,989 words. I relied upon the word count feature in Microsoft Word to obtain this number.

<u>s/ Josh Autry</u>

Dated: December 14, 2015

27

## Certificate of Service

I certify that on this date, I served a true and correct copy of this filing through this Court's electronic case filing system to Devon M. Jacob, Esquire.

<div style="text-align: right;">

s/ Amyra Wagner
Legal Secretary for Josh Autry

</div>

Date: December 14, 2015