## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOHN R. ZIMMERMAN,** | **: Civil Action No.: 1:13-cv-2788** |
| **Plaintiff,** | **:** |
| | **: District Judge: Yvette Kane** |
| **v.** | **:** |
| | **: CIVIL ACTION – LAW** |
| **THOMAS W. CORBETT, et al.,** | **:** |
| **Defendants.** | **: JURY TRIAL DEMANDED** |

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## THE DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

### RELEVANT PROCEDURAL HISTORY

On October 14, 2013, Plaintiff initiated this action by the filing of a Complaint (Doc. 1). On May 7, 2014, Plaintiff filed an Amended Complaint (Doc. 20). On June 4, 2014, the Defendants filed a motion to dismiss the Amended Complaint. On February 10, 2015, the Court issued an Order (Doc. 30) granting in part and denying in part the Defendants' motion to dismiss. On March 12, 2015, the Defendants filed an Answer (Doc. 33). On November 30, 2015, the Defendants filed a motion for judgment on the pleadings (Doc. 47). On December 14, 2015, the Defendants filed a brief in support of their motion (Doc. 49). This brief is filed in opposition to the Defendants' motion for judgment on the pleadings.

## STATEMENT OF FACTS

For a complete statement of material facts, Plaintiff respectfully refers the Court to Plaintiff's Amended Complaint (Doc. 20) at ¶¶ 12-164. A review of the Defendants' Answer (Doc. 33), reveals that the Defendants admitted the allegations at paragraphs 33 & 162; failed to properly respond to the allegations at paragraphs 12-32, 34-111, 113, 115-122, 124, 126, 130-151, and 154-156; and denied the allegations at paragraphs 112, 114, 123, 125, 127-129, 152, 153, 157-161, and 163-164. Therefore, while the Defendants state otherwise,[1] the only undisputed facts are that Plaintiff was one of the nine staff members arrested (Doc. 20 at ¶ 33), and that for over two years, the Defendants refused to dismiss the criminal charges against him, even after Judge Lewis dismissed the related conspiracy charges involving the co-defendants (Doc. 20 at ¶ 162).

## QUESTION PRESENTED

Should the Court deny the Defendants' motion for judgment on the pleadings when (1) all material facts remain in dispute, (2) the motion largely seeks judgment on a Procedural Due Process claim that has not been asserted, (3) the motion prematurely reasserts the immunity issue, and (4) the factual record is not developed because for four months, the Defendants have failed to respond in discovery as required?

---

[1] For example, the Defendants state as a purported undisputed fact that "During the grand jury proceedings, witness proffer notes were destroyed pursuant to OAG policy when witnesses testified before the grand jury." Plaintiff, however, has alleged that both proffer notes and investigation notes were destroyed in violation of OAG policy. See Doc. 20 at ¶¶ 114 and 153. Importantly, the investigation notes were destroyed well before investigators testified before the grand jury, which left investigators to testify before the grand jury from summaries or memory. [Plaintiff may have inadvertently caused some confusion by inadvertently referring to investigation notes instead of proffer notes in the caption for the section that starts at paragraph 149 of the Amended Complaint.]

## ARGUMENT

The Defendants filed a motion for judgment on the pleadings, after filing an Answer in which they either failed to properly respond, or denied all material facts. <u>See</u> Answer (Doc. 33). Based upon this fact alone, the Defendants' motion should be denied. <u>See</u>, <u>e.g.</u>, <u>Shapiro v. Marian Radiological Assocs. Inc.</u>, 73 Pa. D. & C.4th 318, 322 (Pa.Com.pl. 2005) ("in order to grant a motion for judgment on the pleadings, the facts must be undisputed.")

Moreover, the majority of the Defendants' motion seeks judgment for a Procedural Due Process claim. However, Plaintiff never asserted a Procedural Due Process claim. Rather, Plaintiff asserted state and federal malicious prosecution claims. <u>See</u> Amended Complaint at Counts I and II. Specifically, Plaintiff's complaint is that the Defendants maliciously prosecuted him without probable cause. Therefore, the Defendants' motion is of no relevance to the instant litigation.[2]

Finally, the Defendants renew their request for immunity. As discussed further below, however, in the Court's Order granting in part and denying in part the Defendants' motion to dismiss, the Court stated in relevant part, "Defendants may raise their immunity arguments at summary judgment, following development of the factual record in this case." <u>See</u> Order (Doc. 30). As the Court already decided that the

---

[2] Importantly, the <u>Brady</u> violations that occurred, while not separate claims, are strong evidence of the Defendants' maliciousness. Furthermore, while certain Defendants may be immune from being held civilly liable for certain conduct, said conduct is still evidence of the Defendants' malicious state of mind.

immunity issue should not be raised again, or decided, until at the earliest, in a motion for summary judgment after the record is developed, the Defendants' motion should be denied.

### A. As the Court previously determined, Plaintiff pled facts that plausibly show why he is entitled to relief.

In Section A, the Defendants provide the Court with the applicable legal standard, i.e., "A motion for judgment on the pleadings based on the defense that the plaintiff has failed to state a claim is analyzed under the same standards that apply to a Rule 12(b)(6) motion." <u>Revell v. Port Auth. of NY, NJ</u>, 598 F.3d 128, 134 (3d Cir. 2010). The Defendants previously filed a motion to dismiss, which on February 10, 2015, the Court granted in part and denied in part. <u>See</u> Order (Doc. 30). In denying in part the Defendants' motion, the Court stated in relevant part,

> Plaintiff's malicious prosecution claims in Counts One and Two against the remaining Defendants are **NOT DISMISSED** to the extent that they are premised on allegations that (1) the Defendants manufactured witness testimony and intimidated witnesses prior to the grand jury proceedings, (2) the Defendants destroyed exculpatory evidence, and (3) that Defendant Fiore signed a criminal complaint and affidavit of probable cause that contained false and misleading statements[.]

The Defendants could have but did not file a motion for reconsideration of the Court's Order (Doc. 30). Instead, on March 12, 2015, the Defendants filed an Answer, in which they either failed to properly respond or denied the material facts. <u>See</u> Answer (Doc. 33). On September 21, 2015, Plaintiff served the Defendants with Interrogatories **(Exhibit 1)** and a Request for the Production of Documents ("RFP") **(Exhibit 2)**. On

the same date, Plaintiff served subpoenas on the Commonwealth of Pennsylvania ("Commonwealth") and the Office of Attorney General ("OAG"). On October 8, 2015, the Commonwealth and OAG served objections to the subpoenas. On October 22, 2015, the Defendants served 106 pages of "Supplemental Objections" **(Exhibit 3)** to the Interrogatories and RFP. On December 15, 2015, the Court issued an Order staying all deadlines but directing the Parties to continue with written discovery. <u>See</u> Order (Doc. 50). For over four months, however, the Defendants, have failed, and continue to fail, to respond to the Interrogatories and RFP, as required. Instead, the Defendants have essentially renewed their already decided motion to dismiss in the form of a motion for judgment on the pleadings.

**B. As the Court previously decided, the Defendants' request for immunity should not be decided until, at the earliest, in a motion for summary judgment after the record is developed.**

In Section B, the Defendants state the legal standard to be applied in determining whether or not the Defendants are entitled to immunity. As previously discussed, on February 10, 2015, the Court granted in part and denied in part the Defendants' motion to dismiss. <u>See</u> Order (Doc. 30). At that time, the Court stated in relevant part, "Defendants may raise their immunity arguments at summary judgment, following development of the factual record in this case." As the Court already decided that the immunity issue should not be raised again, or decided, until at the earliest, in a motion for summary judgment after the record is developed, and the record is not developed in large part because in their Answer, the Defendants either (1) failed to properly respond,

or (2) denied the material facts; and for over four months the Defendants have failed to respond in discovery as required, the Defendants' motion should be denied.

**C. The Defendants' mistakenly request that the Court grant them immunity for a Procedural Due Process claim that was not asserted.**

In Section C, the Defendants assert that they are entitled to immunity because "The law is not clear that Brady can be violated without a trial and conviction." While Plaintiff disagrees with the Defendants' legal conclusion, the Court need not decide the issue because Plaintiff did not assert a Due Process claim. Rather, Plaintiff asserted state and federal malicious prosecution claims. See Amended Complaint at Counts I and II.

To prevail on a § 1983 malicious prosecution claim, a Plaintiff must establish that: (1) Defendant(s) initiated a criminal proceeding; (2) the criminal proceeding ended in Plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) Defendant acted maliciously or for a purpose other than bringing plaintiffs to justice; and (5) Plaintiffs suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. See DiBella v. Borough of Beachwood, 407 F.3d 599 (3d Cir. 2005); Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003).

Again, the issue of whether or not a trial and conviction is required in order to establish a Procedural Due Process Brady claim is not before the Court. However, the intentional destruction of exculpatory evidence, and the fabrication of evidence, for the purpose of initiating false criminal charges and maintaining a criminal prosecution, is strong evidence in support of elements 1, 3, and 4, of a malicious prosecution claim.

**D. The Defendants' mistakenly request that the Court grant them immunity for a Procedural Due Process claim that was never asserted.**

In Section D, the Defendants assert that they are entitled to immunity because "The law is not clear that destruction of proffer notes violates due process." Again, while Plaintiff disagrees with the Defendants' legal conclusion, the asserted issue is not before the Court, as Plaintiff did not assert a Procedural Due Process claim. Rather, Plaintiff asserted state and federal malicious prosecution claims. See Amended Complaint at Counts I and II.

As the Defendants correctly note, Plaintiff did not join (and was not required to join) in the motion referenced by the Defendants, and decided by Judge Lewis, in the Co-defendants' underlying state criminal matter. If/when the Defendants respond to the four month overdue discovery responses, Plaintiff believes that he will be able to establish that (1) materially exculpatory information was suppressed or lost; (2) investigation and proffer notes were destroyed in violation of OAG internal policy; (3) investigation notes were not transcribed and approved by a supervisor before their destruction; and (4) investigation notes were destroyed as if they never existed or were reported by memory only.

The issue of whether or not the destruction of investigation and proffer notes is sufficient to establish a Due Process claim is not before the Court. However, the intentional destruction of investigation and proffer notes, in violation of OAG policy and law, for the purpose of initiating false criminal charges and maintaining a criminal

prosecution, is strong evidence in support of elements 1, 3, and 4, of a malicious prosecution claim.

**E. The Defendants' mistakenly request that the Court grant them immunity for a Procedural Due Process claim that was never asserted.**

In Section E, the Defendants assert that they are entitled to immunity because "The law is not clear that any allegedly falsified or destroyed evidence was exculpatory." The Defendants then conclude that "Plaintiff does not plead a Brady violation." The Defendants are correct that Plaintiff did not assert a Procedural Due Process Brady claim. Rather, Plaintiff asserted state and federal malicious prosecution claims. See Amended Complaint at Counts I and II.

The issue of whether or not the destroyed evidence is exculpatory is not before the Court. However, the intentional destruction of investigation and proffer notes, in violation of OAG policy and law, for the purpose of initiating false criminal charges and maintaining a criminal prosecution, is strong evidence in support of elements 1, 3, and 4, of a malicious prosecution claim.

**F. The Defendants' again mistakenly request that the Court grant them immunity for a Procedural Due Process claim that was never asserted.**

In Section F, the Defendants assert that they are entitled to immunity because "The law is not clear that the notes were impeachment evidence." Plaintiff, however, did not assert a Procedural Due Process claim. Rather, Plaintiff asserted state and federal malicious prosecution claims. See Amended Complaint at Counts I and II.

The issue of whether or not the destroyed evidence is impeachment evidence is not before the Court. However, the intentional destruction of investigation and proffer notes, in violation of OAG policy and law, for the purpose of initiating false criminal charges and maintaining a criminal prosecution, is strong evidence in support of elements 1, 3, and 4, of a malicious prosecution claim.

### G. The law is clear that Plaintiff suffered a seizure to the extent necessary to establish a malicious prosecution claim.

In Section G, the Defendants argue that "The law is not clear that Plaintiff was seized." The Defendants mistakenly refer to a "pre-filing arrest." However, no "pre-filing" arrest was alleged. Rather, *after* the filing of criminal charges, Plaintiff was taken into physical custody, forced to engage in a "perp-walk," and suffered an ongoing deprivation of liberty consistent with the concept of seizure as a consequence of being subject to bail conditions and having his passport confiscated. See Amended Complaint at ¶ 181. Plaintiff clearly suffered a seizure to the extent necessary to establish a malicious prosecution claim. See DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir.2005) (citation omitted).

### H. An objectively reasonable law enforcement officer would not have believed that probable cause existed to arrest the Plaintiff.

In Section H, the Defendants argue that "Any reasonable agent would have believed probable cause existed." This is an issue for the jury to decide. However, for the sake of argument, no objectively reasonable law enforcement officer would have

believed that probable cause existed. The Defendants argue that the following facts alone establish *probable cause* that Plaintiff committed a criminal offense:

> The grand jury issued a subpoena to the House Republican Caucus on February 25, 2008, for campaign material. Ex. 4. Plaintiff concedes that a man called the House Republican Campaign Committee from Plaintiff's phone line to tell the HRCC to expect a delivery of boxes of campaign material, AC ¶69, 114(d) and 115(f), Plaintiff was normally at his desk, ¶146, and boxes of campaign material was then moved to HRCC, ¶69.

At best, the above establishes *reasonable suspicion*, not probable cause. If/when the Defendants respond to the four month overdue discovery responses, Plaintiff believes that he will be able to establish that the Commonwealth possessed, *but ignored,* evidence that vitiated probable cause:

a. The Defendants knew that Lori Lochetto's and Plaintiff's presence or absence from the Capital could have been easily tracked, at least in part, through the access card system for the parking garage.

b. The Defendants knew that persons who frequent the Capital referred to the entirety of Room 414, not just "Perzel's Office," as "Perzel's Office" but they failed to confirm what each witness meant when they referenced the location of "Perzel's Office."

c. The Defendants knew that if Plaintiff was sitting at his desk, he could not see the front door to Room 414 or the conference room (where the boxes were likely located until Lochetto moved them on February 29, 2008).

d. The Defendants knew that the boxes were not delivered to a location visible from Plaintiff's desk.

e. The Defendants knew that multiple witnesses contradicted Lochetto's version of the events, i.e., that the boxes in question were placed in Perzel's *private* office on a date prior to February 29, 2008, the date that she actually moved the boxes into Perzel's private office.

f. The Defendants knew that several telephones, if not all the telephones, *at each desk in Room 414, and within each office in Room 414*, had Plaintiff's telephone line installed on them.

g. The Defendants knew that literally anyone in the Capital building (including but not limited to, capital police, the cleaning crew, Sandra Majors' staff of three, and a receptionist), had unfettered access to Room 414, and could have placed the call to the HRCC from multiple phones using Plaintiff's telephone line, and could have moved the boxes in question.

h. The Defendants knew that George Matthews, HRCC, received a phone call from Perzel's office suite discussing the delivery of boxes of material. The phone call was a few days before the boxes were delivered to HRCC.

i. Mark Miller, Supervisor of House Republican caucus messengers was recorded in the messenger log as being in Room 414, Perzel's office suite on Monday, February 25, 2008.

j. The Defendants knew that the call in question was likely placed by Miller during his special trip to Room 414 as noted in the messenger log.

k. The Defendants knew that Lochetto would admit that the Plaintiff was not present when she moved the boxes in and out of the Perzel office suite on February 25, 26, 27 and 29.

l. The Defendants knew that Plaintiff was not present when Nathan Fineman delivered boxes to Room 414 on Monday, February 25, 2008.

m. The Defendants knew that the Messengers did not see Plaintiff in Room 414/"Perzel's Office" when they were in the office to deliver or move boxes.

The aforementioned facts that were known to the Defendants vitiate any claimed existence of probable cause.

**I. The agents initiated the prosecution.**

In Section I, the Defendants argue that "Notably, the destruction of notes could not possibly fall within this exception and the prosecutors and agents destroyed the notes pursuant to OAG policy." Again, as previously discussed, whether or not the destruction of notes occurred pursuant to, and in accordance with, OAG policy, is a factual issue that has not yet been explored, in large part, because for over four months, the Defendants have failed to respond in discovery as required.

The Defendants further argue that "It is implausible that the agents destroyed the notes without prosecutor knowledge; in fact, Plaintiff found out that the notes were destroyed from the prosecutors." First, the alleged "implausibility" cannot be decided without a factual record, which cannot be developed until after the Defendants respond in discovery as required. Second, the alleged "implausibility" is a factual determination for the jury to decide. Third, the fact that Plaintiff learned about the destruction of the notes from prosecutors does not mean that (1) prosecutors knew about the destruction when it occurred, or (2) that prosecutors *ever* received the evidence/information contained in the destroyed notes.

The Defendants argue, "As for falsification of evidence, Plaintiff does not allege that the agents provided false information to the prosecutors or otherwise interfered with prosecutorial discretion." To the contrary, as the Court correctly stated, "the Court reads Plaintiff's amended complaint as alleging that both Fiore and Speaks were involved in the alleged fabrication of evidence prior to the grand jury proceedings, and with the

alleged destruction of exculpatory evidence." <u>See</u> Memorandum (Doc. 29) at p. 20. Moreover, as the Court also correctly noted, "Fiore signed the criminal complaint and affidavit of probable cause, which Plaintiff alleges contains false or misleading statements." <u>Id.</u>

**J. Agents Fiore's and Speaks' actions, in destroying evidence and submitting a criminal complaint and affidavit of probable cause that contain false or misleading statements, is presumed to be unreasonable.**

In Section J, Defendants Fiore and Speaks renew their request for immunity, before the factual record is developed, and before summary judgment. Specifically, these Defendants appear to argue that they relied in good faith on a prosecutor's legal advice (although they fail to identify the prosecutor or the legal advice). Moreover, they argue that Judge Wenner bound the case over for court after a Preliminary Hearing (where the standard is *prima facie* as opposed to probable cause, and where exculpatory evidence is not presented). <u>See</u> <u>Cosmas v. Bloomingdales Bros.</u>, 660 A.2d 83, 86 (Pa. Super. Ct. 1995). Finally, they argue that a *habeas* motion was denied.

This Court already correctly decided that "The Court agrees with Plaintiff that although the earlier probable cause determinations cited by Defendants are 'weighty evidence' of probable cause, these determinations are not conclusive evidence of probable cause that precludes Plaintiff's Section 1983 and state law malicious prosecution claims." Memorandum (Doc. 29) at p. 8 (<u>citing</u> <u>Merkle v. Upper Dublin Sch. Dist.</u>, 211 F.3d 782, 789 (3d Cir. 2000); <u>Pardue v. Gray</u>, 136 F. App'x 529, 533 (3d Cir. 2005); <u>Marshall v. Penn Twp., Pa.</u>, 458 F. App'x 178, 181 n.4 (3d Cir. 2012); <u>Kline</u>

v. Hall, No. 12-1727, 2013 WL 1775061, at *5 (M.D. Pa. Apr. 25, 2013); Bingaman v. Buhay, No. 06-2144, 2007 WL 707026, at *5 (M.D. Pa. Mar. 2, 2007)). Moreover, as a matter of law, it is not reasonable for the Defendants to rely on legal advice that is based on their destruction of exculpatory evidence, fabrication of evidence, and provision of misleading or false statements in sworn filings.

### K. The Defendants destroyed and fabricated evidence *before* the grand jury was empaneled.

The Defendants' application of the law to the facts does not comport to what the courts likely intended. Pennsylvania is one of only two states, and the District of Columbia, that uses investigating, as opposed to indicting, grand juries. In Pennsylvania, grand juries are empaneled for 18-month terms that may be extended to 24 months, and can hear multiple unrelated cases. In Pennsylvania, since grand juries are empaneled for a set period of time, and hear whatever cases are ready to be heard during that timeframe, it is possible for a grand jury to be empaneled before a crime has been committed, is investigated, or a decision has been made to proceed to a grand jury.

While the Defendants are correct that the underlying events started with a subpoena issued by an already empaneled grand jury, the grand jury was investigating a different matter. It is undisputed that the alleged events underlying the criminal charges asserted against Plaintiff had not yet occurred when the subpoena issued. If/when the Defendants respond in discovery, discovery will reveal that the destruction of

investigation notes and the fabrication of evidence, occurred well before it was decided to present Plaintiff's case to the grand jury.

**L. Former AG Corbett knew of the fabrication and destruction of evidence.**

In Section L, Defendant Corbett renews his previously denied argument that Plaintiff failed to allege his personal involvement in the claims asserted. The Court, however, already decided this issue against Defendant Corbett. Specifically, the Court stated,

> the Complaint also alleges that the "Defendants manipulated and threatened prospective grand jury witnesses," . . . Regarding Defendant Corbett, this averment sets forth that all Defendants – which the Court construes as inclusive of Defendant Corbett in his then-capacity as Attorney General – participated in the manufacturing of evidence prior in preparation for the grand jury proceedings. The Court finds that this is sufficient to allege the personal involvement of Defendant Corbett regarding the manipulation of witnesses, and the Court will not dismiss him on this basis.

Memorandum (Doc. 29) at pp. 18-19.

Defendant Corbett argues that "Plaintiff's allegations are implausible." As previously discussed, the alleged "implausibility" cannot be decided without a factual record, which cannot be developed until after the Defendants respond in discovery as required. Moreover, the alleged "implausibility" is a factual determination for the jury to decide.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the

Defendants' motion for judgment on the pleadings.


**Respectfully Submitted,**

_____　　　　　　　　**Date:  January 26, 2016**
**DEVON M. JACOB, ESQUIRE**
Pa. Sup. Ct. I.D. 89182
Counsel for Plaintiff

**JACOB LITIGATION**
P.O. Box 837, Mechanicsburg, Pa. 17055-0837
717.796.7733 | djacob@jacoblitigation.com

| | |
|---|---|
| **JOHN R. ZIMMERMAN,** | **: Civil Action No.: 1:13-cv-2788** |
| **Plaintiff,** | **: (Filed: 11/14/2013)** |
| | **:** |
| **v.** | **: District Judge: Yvette Kane** |
| | **:** |
| **THOMAS W. CORBETT, et al.,** | **: CIVIL ACTION – LAW** |
| **Defendants.** | **: JURY TRIAL DEMANDED** |

## CERTIFICATE OF SERVICE

I hereby certify that on the date listed below I electronically filed the foregoing with the Court using the CM/ECF system, which sent notification of such filing to the following person(s) at the following email addresses:

Frank J. Lavery, Jr., Esquire
Email: flavery@laverylaw.com

Josh Autry, Esquire
Email: JAutry@laverylaw.com

**DEVON M. JACOB, ESQUIRE**

Date: **January 26, 2016**