## 28TH STATEWIDE INVESTIGATING GRAND JURY PRESENTMENT No. 2.

We, the members of the 28th Statewide Investigating Grand Jury, having received and reviewed evidence regarding allegations of violations of the Pennsylvania Crimes Code and related laws, occurring in Dauphin County, Pennsylvania, pursuant to notice of submission of Investigation No. 4, do hereby make the following findings of fact, conclusions, and recommendation of charges.

### FINDINGS OF FACT

This investigation was commenced as the result of public allegations of potential public corruption and criminal misconduct within the Pennsylvania Legislature. This Grand Jury Investigation was initially commenced before the 25th Statewide Investigating Grand Jury, in August of 2007, and, upon the expiration of that Grand Jury, this matter was transferred to the attention of the 28th Statewide Investigating Grand Jury in March of 2008. The 28th Statewide Investigating Grand Jury issues this Presentment in furtherance of its ongoing investigation of the Pennsylvania Legislature.

## I. INTRODUCTION

This Grand Jury has again uncovered, and by this Presentment charges, elected officials and employees within the Pennsylvania legislature for the misuse and theft of millions of dollars. This time the offenses occurred within the leadership of the House Republican Caucus of the Pennsylvania legislature. This presentment will disclose that a vast array of public expenditures, exceeding twenty million dollars, were spent between 2000 and 2007 by the House Republican

1

DEF366

Katz campaign. Dull testified that all of this work for the Katz campaign was done on legislative time.

Dull also testified that Perzel also had him work on Councilman level district races in Philadelphia. Perzel would personally direct Dull to conduct analysis and polls for these elections. Dull testified that Preski was also involved in these efforts.

In addition, Dull testified that Perzel had him secretly work on a strategy to determine if any successful attempt could be made to defeat Fumo in an election. Dull prepared polls, conducted the polls and determined that any attempt would not be successful.

As previously described, Preski's wife became interested in running for a city council at large seat in Philadelphia County. Preski had Dull do an analysis of his wife's chances for success for one of these at large seats.

## XV. **OBSTRUCTION AND HINDERING**

The acquisition of evidence in this case has not been without significant obstacles. Missing and incomplete information from within the Republican Caucus has led to the exercise of significant efforts to acquire pertinent information from sources outside of the Caucus. This has also led to many additional investigations into the causes for missing or incomplete evidence. Presented herein are some initial charges. These investigations remain ongoing.

### A. Missing Boxes

The 25th Statewide Investigating Grand Jury, on February 26, 2008, served a series of subpoenas upon the House Republican Caucus. These subpoenas sought an extensive array of information and material relevant to the investigation of this Grand Jury. Included in these

178

DEF543

lawfully issued subpoenas was an order for the caucus to produce before the Grand Jury evidence of "any and all evidence of campaign work" that a listed number of employees may have performed. Two days after the service of this subpoena, an employee of the Pennsylvania Legislature appeared in person at the offices of the Attorney General and stated that political and campaign material was being removed from a room, identified as room B-02, located in the basement in the Irvis Office building in the Pennsylvania Capitol. The employee further elaborated that this room had been assigned as a secure storage room for Representative John Perzel. The employee provided this statement based upon first hand information the employee had personally witnessed in that room. Subsequently, the Office of Attorney General was able to confirm, that same day, that Room B-02 had indeed been assigned as a secure storage room to Representative John Perzel. The following day, on February 29, 2008, the supervising judge of the Statewide Investigating Grand Jury issued a subpoena upon the House Republican Caucus ordering the immediate production of "any and all campaign documents or materials removed from Room B-02, in the basement of the Irvis Office Building, on February 26, 2008, or the sixty days preceding. You are ordered to disclose the location of any and all other materials removed from this location during the period described."

As a result of the service of this subpoena, an agent and prosecutor from the Office of Attorney General entered the Irvis Office Building at approximately 6:00 p.m. on February 29, 2008 for the purpose of inspecting pertinent areas of the Capitol in search of the political and campaign material that had been in Room B-02. Escorted by attorneys for the House Republican Caucus, members of Representative Perzel's staff and security officers for the Legislature, the Office of Attorney General inspected numerous boxes that had reportedly been in Room B-02, or had been moved from Room B-02. None of the materials examined contained evidence of

DEF544

political or campaign work. The members of Representative Perzel's staff present during parts of this review, John Zimmerman and Paul Towhey, denied knowledge of any political or campaign material moved from Room B-02. They also denied any knowledge of boxes, in addition to those examined on the night of February 29, 2008, having been moved from Room B-02.

Subsequent investigation by agents of the Office of Attorney General, as well as further process and efforts of the Grand Jury in securing cooperation and testimony in this matter, revealed that there had, in fact, been boxes containing political and campaign materials - as well as boxes containing direct evidence of campaign work performed by public employees - in Room B-02 on and before February 26, 2008. On that same date, employees of Representative Perzel directed House Republican Caucus messengers to remove boxes of materials from B-02 and transport them to Representative Perzel's office suite located at Room 414 of the Main Capitol Building. Testimony from the caucus messengers, corroborated by video footage from security cameras located between Room B-02 in the basement of the Irvis Office Building and Perzel's office in Room 414, confirm that at least two cart loads of boxed material were transferred to Perzel's office on February 25, 2008 and February 26, 2008.

Perzel's secretary, Lori Lochetto, had twice gone to Room B-02 and examined the materials in that room. She reported the existence of the campaign materials and evidence to Perzel's chief of staff, Paul Towhey. Towhey instructed her to transport all the campaign materials, as well as some non-campaign related items, to Representative Perzel's office suite. He further instructed her to then have the campaign materials and evidence of campaign work immediately extracted and moved out of the capitol to the House Republican Campaign Committee offices. These offices were located across the street from the Capitol and were

quickly accessible. Lochetto then examined the boxes of material and extracted the campaign materials. She ordered a House Republican Caucus messenger, on February 27, 2008, come to John Perzel's office suite in the Capitol and remove the boxes and transport them to the House Republican Campaign Committee offices on 3rd Street, in Harrisburg, PA. The messenger in question testified that he specifically recollected being called to Perzel's office by Lori Lochetto and removing at least four (4) to six (6) large boxes of materials and transporting them to the House Republican Campaign Committee. Messenger logs and the security camera video tapes corroborate the messenger's removal of these boxes from Perzel's offices on February 27, 2008.

Sheila Flickinger, the Executive Secretary of the HRCC at the time, testified that approximately six boxes were delivered by House messenger to the HRCC on February 27, 2008. She said these boxes contained campaign fundraising materials for Perzel. She testified that a few days later she received a call from Feese who asked her if boxes had been delivered "a couple of days before" from Perzel's office. She responded affirmatively and told him what was in the boxes. None of this was ever disclosed to the Office of Attorney General or the Grand Jury prior to Flickinger's testimony.

The Office of Attorney General presented the phone records of Paul Towhey to the Grand Jury for the week of February 25, 2008. These records reveal that at times pertinent to the hiding of the campaign materials, as well as on February 29, 2008 following the service of this Grand Jury subpoena and the Office of Attorney General's inspections, Towhey was in frequent telephonic communication with Representative Perzel, House Chief Counsel Feese, Perzel staff member John Zimmerman and Lori Lochetto.

181

DEF546

Perzel, Feese, Towhey and Zimmerman engaged in obstructing this investigation and hindering prosecution by the removal of evidence, the hiding of evidence and/or the failure to disclose the existence and location of evidence.

**B. The Handwritten Notes**

This investigation, by the start of 2009, had been actively inquiring into potential criminal activities within the Legislature for over eighteen months. Subpoenas requesting specific evidence of campaign work or activities being performed at the public's expense had been served on the Caucus and had been outstanding since February of 2008. Indeed, a number of Grand Jury subpoenas have been issued throughout 2008 requesting "any and all" information or evidence of RIT staff, public contracts, or other government resources that were employed for illegal/improper purposes.

Former Representative Feese, who had not run for re-election in 2006, became Chief Legal Counsel[41] of the Republican Caucus in January of 2007.[42] During his tenure as Chief Counsel for the Caucus he was intimately involved in the collection and review of evidence sought by the Grand Jury from the Caucus. He was well aware of the materials sought by the Grand Jury, as well as, the growing frustration of investigators as a result of missing or incomplete evidence. This knowledge was certainly made clear at a series of hearings held from

---

[41] Feese was hired as Chief Counsel of the Caucus on the effective date of January 3, 2007 at an annual rate of pay at approximately $155,000. In November of 2007 his annual salary was raised to $196,999 and in January of 2008 it was raised to $201,924. Effective December 31, 2008 his salary was changed backed to $196,999. Feese continues to be employed by the legislature to this date.

[42] Feese has continued to serve in this capacity, as far as the Grand Jury is aware, to this date.

182

DEF547

## RECOMMENDATION OF CHARGES

Based on the evidence we have obtained and considered, which establishes a prima facie case, we, the members of the 28th Statewide Investigating Grand Jury recommend that the Attorney General or his designee, institute criminal proceedings against the below listed individuals and charge them with the listed offenses based upon activities described in the indicated presentment sections:

### JOHN PERZEL

- Conflict of Interest, 65 Pa. C.S.A. §1103 (F3), 13 Counts (1 Count as to each of the following): 1) Use of RIT staff and resources; 2) GCR and Associates, Inc.; 3) Aristotle International Inc.; 4) Labels and Lists, Inc.; 5) Constituents Direct, LLC; 6) Weiss Micromarketing Group; 7) Perzel Campaign and District Offices; 8) Ghost Employees; 9) Greystone/SKP; 10) Fundraising; 11) District Operations; 12) Trips; 13) Miscellaneous Use of Public Resources;

- Theft By Unlawful Taking Or Disposition, 18 Pa. C.S.A. § 3921(F3), 13 Counts (1 Count as to each of the following): 1) Use of RIT staff and resources; 2) GCR and Associates, Inc.; 3) Aristotle International Inc.; 4) Labels and Lists, Inc.; 5) Constituents Direct, LLC; 6) Weiss Micromarketing Group; 7) Perzel Campaign and District Offices; 8) Ghost Employees; 9) Greystone/SKP; 10) Fundraising; 11) District Operations; 12) Trips; 13) Miscellaneous Use of Public Resources;

- Theft Of Services, 18 Pa. C.S.A. §3926 (F3), 13 Counts (1 Count as to each of the following): 1) Use of RIT staff and resources; 2) GCR and Associates, Inc.; 3) Aristotle International Inc.; 4) Labels and Lists, Inc.; 5) Constituents Direct, LLC; 6) Weiss Micromarketing Group; 7) Perzel Campaign and District Offices; 8) Ghost Employees; 9) Greystone/SKP; 10) Fundraising; 11) District Operations; 12) Trips; 13) Miscellaneous Use of Public Resources;

- Theft By Deception, 18 Pa. C.S.A. §3922 (a)(1), (F3), 13 Counts (1 Count as to each of the following): 1) Use of RIT staff and resources; 2) GCR and Associates, Inc.; 3) Aristotle International Inc.; 4) Labels and Lists, Inc.; 5) Constituents Direct, LLC; 6) Weiss Micromarketing Group; 7) Perzel Campaign and District Offices; 8) Ghost Employees; 9) Greystone/SKP; 10) Fundraising; 11) District Operations; 12) Trips; 13) Miscellaneous Use of Public Resources;

- Theft By Failure to Make Required Disposition of Funds Received, 18 Pa. C.S.A. §3927 (F3), 13 Counts (1 Count as to each of the following): 1) Use of RIT staff and resources; 2) GCR and Associates, Inc.; 3) Aristotle International Inc.; 4) Labels and Lists, Inc.; 5) Constituents Direct, LLC; 6) Weiss Micromarketing Group; 7) Perzel Campaign and District Offices; 8) Ghost Employees; 9) Greystone/SKP; 10) Fundraising; 11) District Operations; 12) Trips; 13) Miscellaneous Use of Public Resources;

DEF554

- Criminal Conspiracy, 18 Pa.C.S.A.§903 (F3), 4 Counts (1 Count as to each of the following): 1)Use of RIT staff and resources; 2) GCR and Associates, Inc.; 3) Aristotle International, Inc. 4) Perzel Campaign and District Offices.

## ERIC RUTH

- Conflict of Interest, 65 Pa. C.S.A.§1103 (F3), 8 Counts (1 Count as to each of the following): 1)Use of RIT staff and resources; 2) GCR and Associates, Inc.; 3) Aristotle International Inc.; 4) Labels and Lists, Inc.; 5) Constituents Direct, LLC; 6) Perzel Campaign and District Offices; 7) Fundraising; 8) Trips.

- Theft By Unlawful Taking Or Disposition, 18 Pa. C.S.A.§ 3921(F3), 8 Counts (1 Count as to each of the following): 1)Use of RIT staff and resources; 2) GCR and Associates, Inc.; 3) Aristotle International Inc.; 4) Labels and Lists, Inc.; 5) Constituents Direct, LLC; 6) Perzel Campaign and District Offices; 7) Fundraising; 8) Trips.

- Theft Of Services, 18 Pa. C.S.A. §3926 (F3), 8 Counts (1 Count as to each of the following): 1)Use of RIT staff and resources; 2) GCR and Associates, Inc.; 3) Aristotle International Inc.; 4) Labels and Lists, Inc.; 5) Constituents Direct, LLC; 6) Perzel Campaign and District Offices; 7) Fundraising; 8) Trips.

- Theft By Deception, 18 Pa. C.S.A. §3922 (a)(1), (F3), 8 Counts (1 Count as to each of the following): 1)Use of RIT staff and resources; 2) GCR and Associates, Inc.; 3) Aristotle International Inc.; 4) Labels and Lists, Inc.; 5) Constituents Direct, LLC; 6) Perzel Campaign and District Offices; 7) Fundraising; 8) Trips.

- Theft By Failure to Make Required Disposition of Funds Received, 18 Pa. C.S.A. §3927 (F3), 8 Counts (1 Count as to each of the following): 1)Use of RIT staff and resources; 2) GCR and Associates, Inc.; 3) Aristotle International Inc.; 4) Labels and Lists, Inc.; 5) Constituents Direct, LLC; 6) Perzel Campaign and District Offices; 7) Fundraising; 8) Trips.

- Criminal Conspiracy, 18 Pa.C.S.A.§903 (F3), 8 Counts (1 Count as to each of the following): 1)Use of RIT staff and resources; 2) GCR and Associates, Inc.; 3) Aristotle International Inc.; 4) Labels and Lists, Inc.; 5) Constituents Direct, LLC; 6) Perzel Campaign and District Offices; 7) Fundraising; 8) Trips.

## JOHN ZIMMERMAN

- Hindering Apprehension or Prosecution, 18 Pa.C.S.A.§5105 (F3), 1 Count, as to Missing Boxes.

- Obstructing Administration of Law or Other Governmental Function (M2), 1 Count, as to Missing Boxes.

DEF561